**ORAL ARGUMENT REQUESTED**

**No. 07-1065**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

BILLY PRESLEY, *et al.*,

*Plaintiffs-Appellants*,

v.

WAL-MART STORES, INC.,

*Defendant-Appellee*.

---

On Appeal From the United States District Court for the District of Colorado,
Nos. 95-cv-1705-ZLW-CBS and 95-cv-2050-ZLW-CBS, Judge Zita L. Weinshienk

---

## BRIEF OF APPELLEE WAL-MART STORES, INC.

---

Steven J. Merker
Gregory S. Tamkin
DORSEY & WHITNEY LLP
Republic Place Building, Suite 4700
370 17th Street
Denver, CO  80202
(303) 629-3400

*Counsel for Appellee Wal-Mart Stores, Inc.*

JUNE 25, 2007

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellee Wal-Mart Stores, Inc., states that it has no parent companies and that no publicly-held company owns ten percent or more of its stock.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...................................................i

STATEMENT OF PRIOR OR RELATED APPEALS .......................................1

STATEMENT OF THE CASE ....................................................................1

A. The Statutory And Regulatory Scheme At Issue .......................................1

B. The Original *Presley* and *Fiorenzi* Complaints. ...................................3

C. The First Appeal .....................................................................................5

D. District Court Proceedings After Remand ................................................5

STATEMENT OF FACTS .........................................................................6

A. Background ............................................................................................6

B. The Plaintiffs' Sole Remaining Claim In This Litigation .........................7

C. The Facts Relevant To The Plaintiffs' Sole Remaining Claim ...............11

SUMMARY OF ARGUMENT ...................................................................15

ARGUMENT ..........................................................................................16

I. THE PLAINTIFFS BORE THE BURDEN OF PRODUCING
EVIDENCE OF SPECIFIC FACTS ESTABLISHING THE
EXISTENCE OF A GENUINE ISSUE OF MATERIAL FACT. ..........16

II. WAL-MART ESTABLISHED THE ABSENCE OF A
MATERIAL ISSUE OF FACT BY PRODUCING UNDISPUTED
EVIDENCE THAT NONE OF THE 573 OPT-IN
PHARMACISTS EXPERIENCED PROSPECTIVE
REDUCTIONS IN BASE HOURS SO FREQUENTLY THAT
HIS OR HER SALARY WAS THE FUNCTIONAL
EQUIVALENT OF AN HOURLY WAGE. ......................................17

III. THE PLAINTIFFS FAILED TO CARRY THEIR BURDEN OF
PRODUCING EVIDENCE OF SPECIFIC FACTS SHOWING
THAT OPT-IN PHARMACISTS EXPERIENCED
PROSPECTIVE BASE HOUR CHANGES SO FREQUENTLY

**THAT THEIR SALARIES WERE THE FUNCTIONAL EQUIVALENT OF AN HOURLY WAGE.** ..................................................23

**A .** **Because The Plaintiffs Failed To Offer Any Evidence That Fluctuations In Pharmacists' Salaries Were The Result Of Prospective Base Hour Changes, Evidence Of Such Fluctuations Failed To Create A Genuine Issue Of Material Fact Precluding Summary Judgment.** ..................................................24

**B.** **The Plaintiffs' Claim That Pharmacists Experienced "Informal" Prospective Base Hour Changes Is Based Upon A Fundamental Mischaracterization Of The Evidence And Fails To Raise Any Genuine Issue Of Material Fact.** ..................................................30

**C .** **The Plaintiffs' Claim That Wal-Mart's Alleged "Widespread Practice" Of Prospective Base Hour Reductions Should Be Viewed In Its "Totality" Fails To Raise Any Genuine Issue Of Material Fact.** ..................................................34

**CONCLUSION** ..................................................37

**STATEMENT REGARDING ORAL ARGUMENT** ..................................................38

**CERTIFICATE OF COMPLIANCE** ..................................................39

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ackerman v. Coca-Cola Enterprises, Inc.*, 179 F.3d 1260 (10th Cir. 1999) ..................................................................................... 2

*Ackley v. Department of Corrections*, 844 F. Supp. 680 (D. Kan. 1994) ..................................................................................... 20

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................. 17

*Caperci v. Rite Aid Corp.*, 43 F. Supp. 2d 83 (D. Mass. 1999) ..................... 19

*Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513 (10th Cir. 1994) .............................................................................. 17

*Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990) ........................ 28

*Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .......................................................................... 27

*Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828 (10th Cir. 1986) .............................................................................. 17

*Spradling v. City of Tulsa*, 95 F.3d 1492 (10th Cir. 1996) ............................. 2

*Thomas v. County of Fairfax*, 758 F. Supp. 353 (E.D. Va. 1991) ................. 20

*In Re Wal-Mart Stores, Inc.*, 58 F. Supp. 2d. 1219 (D. Colo. 1999) ........... 4, 9

*In Re Wal-Mart Stores, Inc.*, 395 F.3d 1177 (10th Cir. 2005) ........ 1, 3, 5, 7, 8

## STATE CASES

*Gillmor v. Thomas*, 2007 WL. 1600481 (10th Cir. 2007) ............................. 16

## TABLE OF AUTHORITIES – CONTINUED

**Page(s)**

*Wage and Hour Opinion Letter dated February 23, 1998*, 1998 WL. 852696 ...................................................................................19

*Wage and Hour Opinion Letter dated March 4, 1997*, 1997 WL. 998010 ....................................................................................18

*Wage and Hour Opinion Letter dated November 13, 1970*, 1970 WL. 26462 ......................................................................................18

## DOCKETED CASES

*Presley v. Wal-Mart Stores, Inc.*, No. 95-cv-1705-ZLW-CBS (the "*Presley*" case) ...........................................................................1

*Yates v. Wal-Mart Stores, Inc.*, No. 97-257-ZLW-CBS (the "*Yates*" case) ..............................................................................1

## FEDERAL STATUTES

28 U.S.C. §§ 1331..........................................................................3

29 C.F.R. § 541.300(a)(1).......................................................2, 3, 25

29 U.S.C. § 207(a)(1) ..........................................................1, 2, 7

29 U.S.C. § 213(a)(1) ....................................................................2

29 U.S.C. § 216(b)........................................................................4

29 C.F.R. § 541.604.....................................................................25

Fed.R.Civ.P. 56(c) ......................................................................16

29 C.F.R. § 541.300........................................................................2

## STATEMENT OF PRIOR OR RELATED APPEALS

These two cases, *Presley v. Wal-Mart Stores, Inc.*, No. 95-cv-1705-ZLW-CBS (the "*Presley*" case), and *Fiorenzi v. Wal-Mart Stores, Inc.*, No. 95-cv-2050-ZLW-CBS (the "*Fiorenzi*" case), were consolidated in the district court.  A third case with similar claims, *Yates v. Wal-Mart Stores, Inc.*, No. 97-257-ZLW-CBS (the "*Yates*" case), was consolidated with these two cases for purposes of a prior appeal, *In Re Wal-Mart Stores, Inc.*, 395 F.3d 1177 (10th Cir. 2005).

All three cases raise the question of whether full-time pharmacists employed by Wal-Mart Stores, Inc. ("Wal-Mart") were paid on a "salary basis" and should therefore be classified as "exempt" professional employees under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 213.  This question, in turn, determines whether those pharmacists are entitled to statutory overtime pay under 29 U.S.C. § 207(a)(1).

Wal-Mart moved under Rule 56 F.R.C.P. for a summary judgment of dismissal in the consolidated *Presley* and *Fiorenzi* cases.  The district court granted that motion, and this appeal followed.  Wal-Mart intends to file a similar motion for summary judgment in the *Yates* case, and the decision of the district court in the *Yates* case may also result in an appeal to this Court.

## STATEMENT OF THE CASE

### A.    The Statutory And Regulatory Scheme At Issue

Under the FLSA, employers must pay employees one-and-a-half times their regular hourly rate for any hours worked over 40 in a given workweek. *See* 29 U.S.C. § 207(a)(1). The statute, however, exempts from this requirement certain white-collar employees. Specifically, under 29 U.S.C. § 213(a)(1), Section 207 does not apply to "any employee employed in a bona fide executive, administrative, or professional capacity * * * (as such terms are defined and delimited from time to time by regulations of the secretary * * *)." *See Spradling v. City of Tulsa*, 95 F.3d 1492, 1495 (10th Cir. 1996).

As this Court has recognized, "Congress has delegated the authority to define the FLSA exemptions to the Department of Labor." *Ackerman v. Coca-Cola Enters., Inc.,* 179 F.3d 1260, 1267-68 (10th Cir. 1999). The DOL's implementing regulations are contained in 29 C.F.R. Part 541. Specifically, 29 C.F.R. § 541.300 defines the phrase "employee employed in a bona fide professional capacity." The regulation sets forth a two-part test, addressing both the duties of the employee, *id.* § 541.300(a)(2), and the manner in which the employee is compensated, *id.* § 541.300(a)(1). *See Spradling*, 95 F.3d at 1495. With regard to the latter, an employee must be "compensated for services on a ***salary* * * * *basis*** at a rate of not less than $455 per week" to be considered an exempt professional. 29 C.F.R. § 541.300(a)(1) (emphasis added); *see also Spradling*, 95 F.3d at 1495-96 ("To satisfy the 'salary' test, 'the employer must prove that the employees in question are

paid on a salary basis rather than an hourly rate.'") (quoting *Aaron v. City of Wichita*, 54 F.3d 652, 657-58 (10th Cir. 1995)).

The term "salary basis" is, in turn, defined at 29 C.F.R. § 541.602:

> An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

These lawsuits turn on the meaning of this regulation, and in particular on the construction of this regulation by this Court in *In Re Wal-Mart Stores, Inc*., 395 F.3d 1177 (10th Cir. 2005).

### B.    The Original *Presley* and *Fiorenzi* Complaints.

Both the *Presley* case and the *Fiorenzi* case were filed on July 7, 1995, *Presley* in the United States District Court for the District of Colorado and *Fiorenzi* in the District Court of Las Animas County, Colorado.  Pursuant to 28 U.S.C. §§ 1331 and 1441, Wal-Mart timely removed the *Fiorenzi* case on August 10, 1995.  Aplt. App. 6-7.

The complaints in these two cases were almost identical, except that *Presley* was brought as a collective action on behalf of similarly situated pharmacists nationwide, whereas *Fiorenzi* was brought as a collective action on behalf of similarly situated pharmacists in the state of Colorado.  In both cases, the plaintiffs

claimed that Wal-Mart failed to pay them in accordance with the "salary basis" test under the FLSA, and that they were therefore entitled to overtime compensation. The district court consolidated the two matters (hereafter referred to collectively as "*Presley*") for all purposes on November 14, 1995. Aplt. App. 7. On April 8, 1996, the district court conditionally certified *Presley* as an opt-in collective action under 29 U.S.C. § 216(b). Aplt. App. 11.

On September 11, 1997, the plaintiffs moved for summary judgment as to liability. On September 17, 1998, the Magistrate Judge recommended that the plaintiffs' motion be denied as to most of their claims, but granted as to one claim. The Magistrate Judge found that, when business was slow at a particular pharmacy, Wal-Mart would prospectively reduce pharmacists' base hours, and concomitantly their salary, for the benefit of the company. The Magistrate Judge concluded as a matter of law that this was contrary to the FLSA salary basis test and that Wal-Mart pharmacists were therefore non-exempt from the FLSA overtime requirements. Aplt. App. 942. The Magistrate Judge's recommendation was affirmed and adopted by the district court. *In Re Wal-Mart Stores, Inc*., 58 F.Supp. 2d. 1219 (D. Colo. 1999).

Thereafter, discovery proceeded with respect to the remaining issues. Trial was scheduled for June 2, 2003. Shortly before trial, almost all of the *Presley* opt-in plaintiffs voluntarily agreed to dismiss with prejudice all of their legal claims

except for the prospective reduction claim on which the district court had already granted summary judgment. Therefore, on August 28, 2003, the district court entered final judgment in favor of those plaintiffs as to their prospective reduction claim, and against them as to their remaining claims. Aplt. App. 953-54. On September 26, 2003, Wal-Mart filed its notice of appeal to this Court. Aplt. App. 70.

### C.     The First Appeal

On appeal, this Court held that an employer's practice of prospectively changing salaries does not convert salaried employees to hourly employees entitled to overtime pay unless the purported salary becomes a sham—"the functional equivalent of hourly wages." Accordingly, this Court reversed and remanded for further proceedings. *In Re Wal-Mart Stores, Inc.*, 395 F.3d 1177, 1179 (10th Cir. 2005).

### D.     District Court Proceedings After Remand

After remand, Wal-Mart moved under Rule 56 F.R.C.P. for a summary judgment of dismissal. In support of that motion, Wal-Mart submitted evidence regarding each of the 573 opt-in plaintiffs which showed that Wal-Mart rarely reduced the base hours, and concomitantly the salaries, of full-time pharmacists. Wal-Mart's evidence demonstrated that at least 75 percent of the full-time pharmacists at issue never had their salaries reduced at all during the entire four year-plus relevant period, while the rest experienced no more than a few such changes during

that period.  In light of that evidence, the district court held that none of the 573 opt-in plaintiffs experienced salary changes so frequently that their salaries became the functional equivalent of hourly wages, granted Wal-Mart's motion, and entered a final judgment dismissing the plaintiffs' claim.  This appeal followed.

## STATEMENT OF FACTS

### A.    Background

During the time relevant to these lawsuits, Wal-Mart employed over 6,000 pharmacists, of whom approximately 4,000 worked full time.  Wal-Mart considered full-time pharmacists to be salaried members of management.  They received various benefits provided only to management, including bonuses, certain types of insurance, and salary continuation if they were injured and unable to work.  Full-time pharmacists were assigned a specified schedule (typically, 90 hours every two-week pay period), and paid a specified base salary for each pay period.  If a pharmacist performed certain approved work in addition to his or her specified schedule during a pay period (by covering for a pharmacist on vacation, for example), Wal-Mart paid that pharmacist additional compensation for that extra time, at that pharmacist's equivalent hourly pay rate — in other words, at a rate derived by dividing the pharmacist's base salary per pay period by his or her scheduled number of work hours, or "base hours," per pay period.  Because Wal-Mart considered

full-time pharmacists to be exempt professionals under the FLSA, it did not pay them the time-and-a-half overtime specified in 29 U.S.C. § 207(a)(1).[1]

**B.    The Plaintiffs' Sole Remaining Claim In This Litigation**

After remand following the prior appeal, the plaintiffs had only one claim remaining before the district court—that Wal-Mart prospectively reduced the base hours, and concomitantly the salaries, of pharmacists so frequently as to constitute a "sham" salary arrangement—that is, so frequently "as to make the salary the functional equivalent of an hourly wage." *In re Wal-Mart Stores, Inc.,* 395 F.3d 1177, 1189 (10th Cir. 2005). All of the plaintiffs' other claims had been dismissed.

The boundaries of the plaintiffs' sole remaining claim were established by (1) the Magistrate Judge's Recommendation dated September 17, 1998, recommending that the plaintiffs' 1997 summary judgment motion be granted (later affirmed by the district court) (the "1998 Summary Judgment Order"), Aplt. App. 927-52; (2) the Order Entering Final Judgment entered by the district court on August 27, 2003 (the 2003 Final Judgment Order"), Aplt. App. 953-54; and (3) the opinion of this Court in *In re Wal-Mart Stores, Inc.,* 395 F.3d 1177 (10th Cir. 2005) reversing the 2003 Final Judgment Order.

---

[1] During the relevant period, Wal-Mart's compensation of its full-time salaried pharmacists was described in a document entitled "Policy Statement Full-Time Pharmacist Compensation." Aplt. App. 624.

In the 1998 Summary Judgment Order, the Magistrate Judge considered five claims made by the plaintiffs. The plaintiffs claimed that pharmacists were not paid on a salary basis because:

(1)    Wal-Mart's records allegedly showed that pharmacists' pay "routinely deviated" from their base salary hours and reflected pay for actual hours worked, Aplt. App. 937;

(2)    Full-time pharmacists allegedly received less than their full salary when they took partial days off, Aplt. App. 938;

(3)    Full-time pharmacists were allegedly required to work "off the clock;" Aplt. App. 940;

(4)    Wal-Mart allegedly directed pharmacists to work less than their regular schedule when business was slow by asking them to leave early or take time off, and paid them a correspondingly reduced amount, Aplt. App. 941-42; and

(5)    When business was slow at a particular pharmacy, Wal-Mart would prospectively reduce pharmacists' base salary hours, and concomitantly their salary, for the benefit of the company, Aplt. App. 942-43.

As to the first four claims, the Magistrate Judge held that genuine issues of material fact existed, and recommended denial of the plaintiffs' summary judgment motion. On the fifth claim, the Magistrate Judge recommended that the plaintiffs' summary judgment motion be granted. Aplt. App. 944, 949. The district court

agreed and entered summary judgment for the plaintiffs. *In Re Wal-Mart Stores, Inc.*, 58 F.Supp. 2d. 1219 (D. Colo. 1999).

As this case neared trial in 2003, the plaintiffs and Wal-Mart reached an agreement that permitted an appeal of the summary judgment which the district court had entered for the plaintiffs. Pursuant to that agreement, on August 27, 2003, the district court entered the 2003 Final Judgment Order which dismissed with prejudice *all* of plaintiffs' claims excepting *only* the claim as to which the plaintiffs' summary judgment motion had been granted. Aplt. App. 953-54. As a result of that Order, the only claim left in this case was the plaintiffs' claim that they were non-exempt because, when business was slow, Wal-Mart would prospectively reduce pharmacists' base hours and concomitantly their salary for the benefit of the company. As to that claim, final judgment against Wal-Mart was entered. *Id.*

On appeal, the entire focus of this Court was on the claim as to which summary judgment had been granted—that is, the plaintiffs' claim that Wal-Mart prospectively reduced pharmacists' base hours and concomitantly their salary for the benefit of the company. This Court drew a clear distinction between (1) reductions in pay made with respect to a pay period for which salary had already been set, as a result of events within that pay period, and (2) salary reductions to take effect in future pay periods. *In re Wal-Mart Stores, Inc.,* 395 F.3d at 1184. Reductions of

the former variety were not an issue before this Court because claims based on that variety of deductions had been dismissed.  Indeed, the plaintiffs cited to this Court several DOL opinion letters relating to reductions in pay made with respect to a pay period for which salary had already been set, as a result of events within that pay period.  Significantly, this Court deemed those opinion letters inapposite, noting that they dealt with an issue not relevant to the plaintiffs' claim.  *Id*. at 1186-87.  Thus, this Court focused *only* on the claim before it—the plaintiffs' claim that salary reductions to take effect in future pay periods violated the salary basis test. As to that claim, this Court held that Wal-Mart could make prospective reductions in pharmacists' base hours and concomitant salary reductions unless those prospective base hour reductions occurred so frequently as to make the salaries the functional equivalent of an hourly wage.  *Id*. at 1189.

This series of events framed the sole issue before the district court after remand and defined the boundary between evidence that was relevant and evidence that the district court was required to disregard as irrelevant.  The case before the district court had nothing to do with any reductions in pharmacists' salary that might have been made with respect to a pay period for which salary had already been set, as a result of events within that pay period, because claims based on such reductions had been dismissed.  Consequently, evidence purporting to show that Wal-Mart directed pharmacists to work less than their regular schedule when busi-

ness was slow by asking them to leave early or take time off, and paid them a correspondingly reduced amount, was beside the point in the district court, and is beside the point here. The *only* evidence relevant to the case before the district court, and the only evidence relevant here, is evidence relating to prospective reductions in base hours—reductions to take effect in future pay periods—and evidence relating to the frequency of any such reductions.

### C.     The Facts Relevant To The Plaintiffs' Sole Remaining Claim

In support of its summary judgment motion, Wal-Mart presented evidence to the district court consisting of summaries of Wal-Mart's business records reflecting whether any of the opt-in plaintiffs experienced any prospective change in base hours with a concomitant change in salary during the relevant period[2] and, if so, how many. Aplt. App. 266-87. That evidence demonstrated that, of the 573 opt-in plaintiffs:[3]

- 432 pharmacists (approximately 75 percent) never experienced any change in their base hours at any point during the relevant period.

- 99 pharmacists experienced only one prospective base hour change, with a concomitant change in their salaries, during the relevant period.

---

[2] The relevant period for each opt-in plaintiff extends from three years prior to that plaintiff's opt-in date to February 5, 1998.

[3] Wal-Mart had no data relating to base hour changes for eight of the opt-in plaintiffs.

- 24 pharmacists experienced only two prospective base hour changes, with a concomitant change in their salaries, during the relevant period.

- Eight pharmacists experienced three prospective base hour changes, with a concomitant change in their salaries, during the relevant period.

- Two pharmacists experienced four prospective base hour changes, with a concomitant change in their salaries, during the relevant period.

- No pharmacists experienced more than four changes in base hours during the relevant period.  Aplt. App. 268.

Wal-Mart also presented evidence relating to when prospective base hour changes occurred for each pharmacist, how close together in time those changes were, and whether those changes were increases or decreases in base hours.  Aplt. App. 280-87.  That evidence demonstrated the following:

For the 24 opt-in pharmacists who experienced two prospective base hour changes during the relevant period:

- The average length of the relevant period over which those two changes occurred was four years and six months.

- The average time between those two changes was 11.5 months.

- The shortest time between those two changes was eight weeks (for two pharmacists).  One of those two pharmacists experienced two prospective base hour changes separated by eight weeks over a four

year and nine month relevant period. The other pharmacist experienced two prospective base hour changes separated by eight weeks over a four year and five month relevant period.

- For each of the other 22 pharmacists who experienced two prospective base hour changes during the relevant period, the time between those two changes was 12 weeks or longer. Aplt. App. 269-70.

For the eight opt-in pharmacists who experienced three prospective base hour changes during the relevant period:

- The average length of the relevant period over which those three changes occurred was four years and four months.

- The average time between those changes was 10.2 months.

- The shortest time between those changes was six weeks (for one pharmacist). That pharmacist experienced three prospective base hour changes over a four year and three month relevant period. The relevant period for that pharmacist began on October 24, 1993. Her first prospective base hour change occurred more than two years later, on April 26, 1996. Her second change occurred approximately five months later in September 1996. Her third change occurred approximately six weeks later on November 10, 1996. She experienced no

further prospective base hour changes from November 10, 1996, to the end of the relevant period, which was February 5, 1998.

- For each of the other seven pharmacists who experienced three prospective base hour changes during the relevant period, the time between those changes was 12 weeks or longer, and most of those changes were a year or more apart.  Aplt. App. 270.

For the two opt-in pharmacists who experienced four prospective base hour changes during the relevant period:

- The average length of the relevant period over which those four changes occurred was four years and six months.

- The average time between those changes was 7.8 months.

- The shortest time between those changes was ten weeks (for one pharmacist).  That pharmacist experienced four prospective base hour changes over a four year and five month relevant period.  The relevant period for that pharmacist began on August 19, 1993.  His first prospective base hour change occurred almost one year and five months later, on January 6, 1995.  His second change occurred one year later, on January 5, 1996.  His third change occurred approximately ten weeks later on March 15, 1996.  His fourth change occurred more than one year and seven months later, on October 26, 1997.  He ex-

perienced no further prospective base hour changes from that date to the end of the relevant period, which was February 5, 1998.

- For the other pharmacist who experienced four prospective base hour changes during his relevant period (four years and eight months), the time between each of those changes was 12 weeks or longer. Aplt. App. 270-71.

On the basis of this evidence, and the plaintiffs' failure to rebut it, the district court correctly granted Wal-Mart's summary judgment motion and dismissed the plaintiffs' sole remaining claim.

## SUMMARY OF ARGUMENT

As the moving party, Wal-Mart established the absence of a genuine issue of material fact by producing undisputed evidence that none of the 573 opt-in pharmacists experienced prospective reductions in base hours so frequently that his or her salary became the functional equivalent of an hourly wage. Accordingly, the plaintiffs had the burden of producing evidence of specific facts showing that opt-in pharmacists experienced base hour reductions with impermissible frequency.

The plaintiffs failed to carry that burden. Although they claimed that pharmacists' salaries sometimes fluctuated from pay period to pay period, they offered no evidence that those fluctuations were the result of prospective base hour changes. Although they claimed that certain pharmacists experienced "informal"

base hour changes with impermissible frequency, they offered no evidence in support of that claim and instead based that claim on a fundamental mischaracterization of the documents on which they relied. Although they claimed that Wal-Mart had a "widespread practice" of making prospective base hour changes, they ignored the fact that, even if it existed, such a "widespread practice" would have amounted to no more than a "widespread practice" of complying with the FLSA salary basis test.

In sum, the plaintiffs failed to produce evidence of specific facts establishing the existence of a genuine issue of material fact. Accordingly, the district court correctly granted Wal-Mart's motion for summary judgment, and this Court should affirm the dismissal of this case.

## ARGUMENT

## I.    THE PLAINTIFFS BORE THE BURDEN OF PRODUCING EVIDENCE OF SPECIFIC FACTS ESTABLISHING THE EXISTENCE OF A GENUINE ISSUE OF MATERIAL FACT.

This Court reviews a grant of summary judgment *de novo*, applying the same legal standard used by the district court. *Gillmor v. Thomas*, 2007 WL 1600481 (10th Cir. 2007). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A party can establish the absence of a material issue of fact by showing that the evidence in the record would be insufficient to sustain a

verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). To avoid summary judgment, the nonmoving party bears the burden of producing affirmative evidence demonstrating the existence of a genuine issue of material fact. *Pasternak v. Lear Petroleum Exploration, Inc*. 790 F.2d 828, 832 (10th Cir. 1986).

## II. WAL-MART ESTABLISHED THE ABSENCE OF A MATERIAL ISSUE OF FACT BY PRODUCING UNDISPUTED EVIDENCE THAT NONE OF THE 573 OPT-IN PHARMACISTS EXPERIENCED PROSPECTIVE REDUCTIONS IN BASE HOURS SO FREQUENTLY THAT HIS OR HER SALARY WAS THE FUNCTIONAL EQUIVALENT OF AN HOURLY WAGE.

As this Court held in the prior appeal in this case, it is not a violation of the FLSA salary basis test for Wal-Mart to prospectively reduce the base hours of a pharmacist with a like reduction in his or her salary. Only if the base hours, and salary, of that pharmacist are changed so frequently as to make the salary of that pharmacist "the functional equivalent of an hourly wage" will he or she become non-exempt under the FLSA. *In re Wal-Mart Stores, Inc.,* 395 F.3d at 1179.

This Court also provided guidance on the question of how "frequently" a pharmacist's base hour changes must occur to be "frequent enough" for his or her salary to become the functional equivalent of an hourly wage. Specifically, this

Court cited with approval three opinion letters issued by the DOL[4] and two district court opinions as illustrating salary changes not frequent enough to violate the salary basis test, and one District Court opinion illustrating salary changes that were frequent enough to violate that test. *Id.* at 1185-88.

The first DOL opinion letter[5] responded to an employer that wished to reduce its operating costs by having 47 five-day work weeks per year and five four-day work weeks at the end of each calendar year, with a proportionate salary reduction at the end of the 47th week, and a proportionate salary increase at the end of the 52nd week. When asked whether changes of this frequency—that is, twice each year, spaced five weeks apart—would violate the salary basis test and render the employees non-exempt, the DOL said "no:" "a reduction in salary resulting from a temporary reduction in the normal workweek" is permissible.

The second DOL opinion letter[6] responded to an employer that wished to reduce its work week by eight hours per week with a commensurate reduction in salary. That too, the DOL said, did not defeat the FLSA exemption.

---

[4] As this Court pointed out, the three DOL opinion letters reflect the DOL's "consistent view over an extended period of time" and that, "given their provenance and legal effect," they are entitled to "great weight." *In re Wal-Mart Stores, Inc.,* 395 F.3d at 1184-85.

[5] U.S. Department of Labor, *Wage and Hour Opinion Letter dated November 13, 1970*, 1970 WL 26462.

[6] U.S. Department of Labor, *Wage and Hour Opinion Letter dated March 4, 1997,*

The third DOL opinion letter[7] responded to an inquiry about an employer's plan that, whenever persistent work shortages occurred in a defined work unit, the work hours of employees in the affected unit would be reduced to 32 per week through the end of the fiscal year, with a proportionate reduction in pay. The DOL approved that plan, stating that "a fixed reduction in salary effective during a period when a company operates a shortened workweek due to economic conditions would be a bona fide reduction not designed to circumvent the salary basis test."

The two district court opinions cited with approval by this Court are to a similar effect. In *Caperci v. Rite Aid Corp.*, 43 F.Supp.2d 83 (D. Mass. 1999), the defendant, a large drug store chain, paid pharmacists salaries that were subject to prospective change

> if Rite Aid and the pharmacist agree to increase or decrease the pharmacist's regular number of hours at the store to which he or she is assigned. The latter can occur either because the pharmacist simply decides that he or she wants to work longer or shorter hours (and Rite Aid concurs) or because the local manager unilaterally decides to change the regular hours of store operation (such as by deciding to close at 9:00 p.m. instead of remaining open until 11:00 p.m.).

43 F. Supp. 2d at 87. The *Caperci* court held that Rite Aid's salary scheme was consistent with the salary basis test and granted summary judgment for Rite Aid.

---

1997 WL 998010.

[7] U.S. Department of Labor, *Wage and Hour Opinion Letter dated February 23, 1998,* 1998 WL 852696.

Similarly, in *Ackley v. Department of Corrections*, 844 F. Supp. 680, 686 (D. Kan. 1994), the district court rejected the argument that prospective reductions in salary, as a result, for example, of a less-than-satisfactory performance evaluation, would violate the salary basis test, holding that "future pay adjustments do not implicate the [salary basis test] regulation's intent because the employee knows before he or she performs the work what their pay will be." The *Caperci* and *Ackley* cases, this Court noted, described prospective reductions in pay that were not frequent enough to amount to the functional equivalent of an hourly wage.

In each of these situations—the three DOL opinion letters, and the *Caperci* and *Ackley* cases—the prospective salary changes were not frequent enough to violate the salary basis test. On the other end of the spectrum, this Court pointed to *Thomas v. County of Fairfax*, 758 F. Supp. 353 (E.D. Va. 1991). In that case, although the employer argued that the employees at issue were salaried, the district court found that their hours varied ***every*** pay period, and that their pay similarly "varied from paycheck to paycheck." Changes in pay that frequent, as this Court noted, could make the employee's wage the functional equivalent of an hourly wage.

In sum, prospective changes in base hours with a concomitant change in salary are, as a matter of law, not frequent enough to violate the salary basis test if they occur (1) only once (as in the 1997 DOL opinion letter), (2) twice yearly

spaced five weeks apart (as in the 1970 DOL opinion letter), or (3) whenever a work shortage occurs (as in the 1998 DOL opinion letter).  On the other hand, such prospective base hour changes are frequent enough to become the functional equivalent of an hourly wage if they occur every pay period (as in the *Thomas* case).

In light of the guidance provided by this Court in the prior appeal, the district court was correct in concluding that none of the 573 opt-in plaintiffs experienced prospective changes in base hours with concomitant changes in salary so frequently that his or her salary became the functional equivalent of an hourly wage.  Specifically, the undisputed facts are as follows:

- Of the 573 opt-in plaintiffs, 432 never experienced any change in base hours at any point during the relevant period, and records could not be found for eight.

- Of the remaining 133 opt-in plaintiffs, 99 experienced only one prospective base hour change during the relevant period which, for each of those 99 pharmacists, was four years or longer.  One prospective base hour change, as this Court noted, is permissible and does not violate the salary basis test.

- Of the remaining 36 opt-in plaintiffs, 24 experienced only two prospective base hour changes during the relevant period, and none were

separated by fewer than eight weeks.   Two prospective base hour changes, as well, are permissible; indeed, the 1998 DOL opinion letter relied upon by this Court in the prior appeal approved changes occurring twice yearly spaced five weeks apart. Accordingly, two prospective base hour changes do not violate the FLSA salary basis test.

- Of the remaining ten opt-in plaintiffs, eight experienced only three prospective base hour changes over a relevant period of more than four years.  Only one of those pharmacists had any changes as close together as six weeks; the rest were 12 weeks or more apart.  The average time between their base hour changes was 10.2 months.  Thus, none of these pharmacists experienced prospective base hour changes that caused their pay to vary each paycheck, as in the *Thomas* case, and none experienced prospective base hour changes so frequently that their salary became the functional equivalent of an hourly wage.

- Both of the remaining two opt-in plaintiffs experienced only four prospective base hour changes over a relevant period lasting more than four years.  For those two opt-in plaintiffs, the shortest time period between prospective base hour changes was ten weeks, the rest were 12 weeks or more apart, and the average time between changes was 7.8 months.   Thus, none of these pharmacists experienced prospective

base hour changes that caused their pay to vary each paycheck, as in

the *Thomas* case, and none experienced prospective base hour changes

so frequently that their salary became the functional equivalent of an

hourly wage.

In sum, not one of the 573 opt-in plaintiffs experienced prospective base hour

changes so frequently that his or her salary was the functional equivalent of an

hourly wage.  In light of the foregoing, the district court was correct in granting

Wal-Mart's motion for summary judgment and dismissing the plaintiffs' case.

### III. THE PLAINTIFFS FAILED TO CARRY THEIR BURDEN OF PRO-DUCING EVIDENCE OF SPECIFIC FACTS SHOWING THAT OPT-IN PHARMACISTS EXPERIENCED PROSPECTIVE BASE HOUR CHANGES SO FREQUENTLY THAT THEIR SALARIES WERE THE FUNCTIONAL EQUIVALENT OF AN HOURLY WAGE.

The plaintiffs attempted to carry their burden of establishing the existence of

a genuine issue of material fact by arguing that Wal-Mart (1) manipulated the sala-

ries of its pharmacists based on budgetary considerations so that those salaries

fluctuated from pay period to pay period; (2) "informally" changed the base hours

of its pharmacists with impermissible frequency, and (3) engaged in a "widespread

practice" of prospective base hour changes.  Yet the plaintiffs failed to offer any

evidence—as opposed to unsupported argument—that the salary fluctuations to

which they refer were the result of prospective base hour reductions.  Moreover,

the plaintiffs' argument that certain pharmacists experienced "informal" base hour

changes is based upon a fundamental mischaracterization of the evidence; indeed, the only evidence in the record on that issue demonstrates that the plaintiffs' argument is simply false. Finally, whether or not Wal-Mart engaged in a "widespread practice" of prospective base hour changes is beside the point. The relevant issue in this case is not whether any Wal-Mart pharmacists experienced prospective base hour changes, because this Court has held that prospective base hour changes do not violate the salary basis test. Rather, the relevant issue here is whether any pharmacist experienced prospective base hour changes so frequently that his or her salaries became the functional equivalent of an hourly wage. Because the undisputed evidence demonstrated that none did, the district court was correct in granting Wal-Mart's summary judgment motion, and this Court should affirm the dismissal of the plaintiffs' case.

### A. Because The Plaintiffs Failed To Offer Any Evidence That Fluctuations In Pharmacists' Salaries Were The Result Of Prospective Base Hour Changes, Evidence Of Such Fluctuations Failed To Create A Genuine Issue Of Material Fact Precluding Summary Judgment.

The plaintiffs argue here, as they did in the district court, that pharmacists' salaries sometimes fluctuated from pay period to pay period, and that evidence of those fluctuations precluded summary judgment. That argument, however, is unavailing because the plaintiffs failed to offer any evidence suggesting that those fluctuations were the result of prospective base hour reductions. Indeed, those

24

fluctuations just as easily could have been the result of circumstances completely consistent with the salary basis test, or the result of actions not at issue in this case.

For example, the plaintiffs point to pay stubs for pharmacist Amy Balmer, which show that she was paid varying amounts over several pay periods.[8]  Yet the plaintiffs fail to cite to any evidence in the record (because there is none) that any variations in Balmer's pay were the result of prospective base hour changes.  Indeed, those variations could easily have been the result of circumstances completely consistent with the salary basis test.  Specifically, Balmer's base hours were 90 per two-week pay period.  Under Wal-Mart's Compensation Policy Statement, Balmer's pay could be reduced for full days off without pay, and could be increased for extra time worked over her usual work week—variations which do not violate the salary basis test.  Aplt. App. 624.[9]  Thus, although the plaintiffs cite to a pay stub reflecting pay for 85 hours in a pay period, that fluctuation in pay from base hours could have occurred because (1) that pharmacist took a full ten hour day off without pay and (2) worked an extra five hours (that is, 90-10+5=85), a set of facts completely consistent with the salary basis test.  Yet the plaintiffs provided

---

[8] See Brief of Appellants at n. 5.

[9] See 29 C.F.R. § 541.602(b)(1) (deductions may be made when employee is absent from work for one or more full days for personal reasons) and 29 C.F.R. § 541.604 (the exemption is not lost if an employee is paid additional compensation based on hours worked for work beyond the normal workweek).

no evidence to the district court, and point to none here, that would allow any reasonable finder of fact to decide whether or not that fluctuation—or, indeed, **any** of the fluctuations upon which they rely—was the result of a prospective base hour change, or the result of circumstances consistent with the salary basis test.

Similarly, the salary fluctuations on which the plaintiffs rely could also have been the result of pharmacists' salaries being docked for partial day absences or other deductions from pharmacists' salaries for pay periods based upon events occurring within those pay periods. In that regard, it bears repeating that the plaintiffs' sole remaining claim is that Wal-Mart prospectively reduced the base hours, and concomitantly the salaries, of pharmacists so frequently as to constitute a "sham" salary arrangement—that is, so frequently "as to make the salary the functional equivalent of an hourly wage." *In re Wal-Mart Stores, Inc.,* 395 F.3d at 1189. All of the plaintiffs' other claims have been dismissed. Accordingly, the only evidence relevant to the plaintiffs' sole remaining claim is evidence of base hour reductions that took place prospectively; *i.e.,* base hour reductions that took effect in future pay periods. Evidence that one or more pharmacists may have experienced deductions from their salary for partial day absences, or were sent home for partial or full days without pay, or may have been paid amounts differing from their base salary, is simply irrelevant, as it relates to deductions from pharmacists' salaries for pay periods based upon events occurring within those pay periods, and

therefore has nothing to do with *prospective* base hour reductions.  Tellingly, the plaintiffs offered no evidence to the district court, and point to none here, that would allow any reasonable finder of fact to decide whether *any* of the fluctuations upon which they rely were the result of prospective base hour changes, or instead were the result of deductions from pharmacists' salaries for pay periods based upon events occurring within those pay periods; that is, deductions not at issue in this case.

The plaintiffs, however, argue that, notwithstanding their failure to offer any evidence linking the salary fluctuations on which they rely to prospective base hour changes, this Court should view evidence of those salary fluctuations in a light most favorable to them and, by doing so, simply ***assume*** that such a link exists to create a genuine issue of material fact precluding summary judgment.  That argument is contrary to the plain language of Rule 56, F.R.C.P. and, indeed, has been flatly rejected by the Supreme Court.

In *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986), for example, American manufacturers of television sets claimed that Japanese manufacturers had illegally conspired to drive them out of the American market.  The Japanese manufacturers moved for summary judgment arguing, among other things, that the American manufacturers could not come forward with "specific facts" demonstrating the existence of an illegal conspiracy.  Though the

American manufacturers argued that their evidence did show an illegal conspiracy, the Supreme Court noted that their evidence was "ambiguous" because it was "as consistent with permissible competition as with illegal conspiracy." *Id*. at 588. The Supreme Court rejected the argument that such "ambiguous" evidence must be construed in favor of the nonmovant American manufacturers to create an inference that an illegal conspiracy existed; instead, the Court held that such an inference could be created only by evidence "that tends to exclude the possibility" of permissible competition. *Id*. Therefore, if a nonmovant presents evidence that can just as easily be explained by other activity as by the challenged activity, and fails to present evidence "that tends to exclude the possibility" of the other activity, summary judgment against the nonmovant should be entered. *Id*. at 597-98 & n.21.

Similarly, in *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), the Supreme court made clear that a court considering a motion for summary judgment cannot "presume" the existence of a link between the nonmovant's evidence and the activity of which he complains; rather, the nonmovant must present evidence—specific facts—demonstrating that the link exists. In *Lujan*, the National Wildlife Federation brought an action challenging the "land withdrawal review program" of the Bureau of Land Management, and claimed to have standing because two of its members used land "in the vicinity" of land covered by the BLM's actions. The

district court granted the defendant's motion for summary judgment and dismissed the plaintiff's claims because, among other things, the plaintiff lacked standing—from the two member affidavits, the district court could not determine whether the members actually used land covered by the BLM's actions.  The Court of Appeals disagreed, holding that (1) the affidavits were "ambiguous" as to whether the two members actually used land covered by the BLM's actions, (2) "when presented with ambiguity on a motion for summary judgment, a district court must resolve any factual issues of controversy in favor of the non-moving party," and therefore was required to "assume, for the purposes of summary judgment," that the two members in fact used land covered by the BLM's actions.  *Id*. at 888.  The Supreme Court, however, disagreed:

> That is not the law.  In ruling upon a Rule 56 motion, a District Court must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied.  That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint.

*Id*. at 889.  Indeed, the Supreme Court emphasized that "[i]t will not do to 'presume' the missing facts because without them the affidavits would not establish the injury that they generally allege."  *Id*.

The holdings in these cases apply directly to the issue before the Court. Here, the plaintiffs presented evidence of salary "fluctuations," but failed to pre-

sent specific facts that either linked those fluctuations to prospective base hour changes, or tended to "exclude the possibility" that they were caused by conduct not at issue in this case.  Instead, the plaintiffs make the precise argument that the Supreme Court rejected in *Matsushita* and *Lujan*—that this Court is required to resolve factual issues in their favor and therefore is required to *presume* that those fluctuations were the result of prospective base hour reductions.   As the Supreme Court has held, presumptions do not suffice to raise genuine issues of material fact. Accordingly, the district court was correct to grant Wal-Mart's summary judgment motion, and this Court should affirm the dismissal of the plaintiffs' claim.

> **B.    The Plaintiffs' Claim That Pharmacists Experienced "Informal" Prospective Base Hour Changes Is Based Upon A Fundamental Mischaracterization Of The Evidence And Fails To Raise Any Genuine Issue Of Material Fact.**

The plaintiffs assert certain Wal-Mart records called Pharmacist Payroll Histories for pharmacists Wagner, Solak, Justice, Kurazawa, and Hariri show that each of these pharmacists experienced impermissibly frequent base hour changes, and that issues of material fact precluding summary judgment therefore existed.  That assertion, however, is based upon a fundamental mischaracterization of those records.

For example, the plaintiffs argue that the Pharmacist Payroll History for Mary Wagner shows "no fewer than 10" base hour changes[10] because the words "baseline adjustment" appear ten times in the "Reason" column of Wagner's Pharmacist Payroll History.  See Aplt. App. 486-69.  Significantly, that argument is not supported by *any* evidence in the record.  Moreover, it is clear from the face of Wagner's Pharmacist Payroll History that the plaintiffs have mischaracterized that document; in fact, that document shows that the number of base hours Wagner was assigned—that is, the number which appears under the column headed "Base Hours"—changed only *twice* during her entire career with Wal-Mart; one change from 104 hours to 103 hours on January 6, 1995, Aplt. App. 487-88, and a second change from 103 hours to 84 hours on July 7, 1995, Aplt. App. 488.[11]  Indeed, Mark Schneider, Wagner's District Manager who made the handwritten entries on her Pharmacist Payroll History, confirmed in his deposition testimony that the numbers that appear under the column headed "Base Hours" in fact reflected Wagner's "actual" base hours, thus confirming that Wagner experienced only two base

---

[10] See Brief of Appellant at p. 12.

[11] Pharmacist Payroll Histories such as the one for Mary Wagner were used to determine whether pharmacists would receive compensation for instances in which they reported "actual hours" that numbered fewer than "base hours."  Thus, the notation "baseline adjustment" under the column heading "Reason" refers, not to repetitive changes in base hours, but to the reason why a difference between the printed number of base hours and the number of "actual hours" did not result in a payment to the pharmacist.

hour changes during the relevant period.  Aplt. App. 961-67.  Accordingly, the un-disputed evidence demonstrates that Wagner did not experience prospective base hour changes so frequently that her salary became the functional equivalent of an hourly wage.

Similarly, the plaintiffs argue that the Pharmacist Payroll History for Mark Solack shows "no fewer than fifteen" base hour changes.[12]  Again, the plaintiffs' argument is unsupported by any evidence in the record, and is based on a funda-mental mischaracterization of that document.  As with Wagner, it is clear from the face of Solack's Pharmacist Payroll History that the number of base hours he was assigned—that is, the number which appears under the column headed "Base Hours"—changed only *once* during his entire career with Wal-Mart; a change which occurred in August 1995.  Aplt. App. 493.  As with Wagner, Mark Schnei-der confirmed in his deposition testimony that he made the handwritten entries un-der the column heading "Base Hours," Aplt. App. 971-98, and that the numbers that appear under the column headed "Base Hours" in fact reflected "actual" base hours, Aplt. App. 961-67, thus confirming that Solack in fact experienced only one base hour change during the relevant period.  The fact that Solack experienced only one base hour change is further confirmed by another payroll record relating

---

[12] See Brief of Appellant at p. 21.

to Solack about which Schneider testified.[13]  Accordingly, the undisputed evidence demonstrates that, like Wagner, Solack did not experience prospective base hour changes so frequently that his salary became the functional equivalent of an hourly wage.

The plaintiffs' argument that the Pharmacist Payroll Histories of Steven Justice, Scott Kurzawa, and Mehrdad Hariri also show impermissibly frequent base hour changes is similarly unsupported by any evidence in the record, and is likewise based on a fundamental mischaracterization of those documents.  Those documents show unequivocally that each experienced only *one* base hour change in his career at Wal-Mart:  Justice experienced a base hour change from 90 to 89 hours on May 13, 1994, Aplt. App. 536; Kurzawa experienced a base hour change from 93 to 83 hours on July 7, 1995, Aplt. App. 497; and Hariri experienced a base hour change from 97.5 to 93.5 hours on February 18, 1994, Aplt. App. 501.

In short, the plaintiffs have failed to present any evidence in support of their argument that pharmacists Wagner, Solak, Justice, Kurazawa, and Hariri experienced impermissibly frequent base hour changes.  Moreover, the plaintiffs' argument is based on a mischaracterization of the Pharmacist Payroll Histories on which they rely, and is contrary to the undisputed record evidence.  Again, the

---

[13] See Aplt. App. 972, 979, which reflects Solack's base hour change in August 1995.

plaintiffs have failed to raise any genuine issues of material fact, and the district court was therefore correct to grant Wal-Mart's summary judgment motion.  This Court should affirm the dismissal of the plaintiffs' claim.

>    ### C.    The Plaintiffs' Claim That Wal-Mart's Alleged "Widespread Practice" Of Prospective Base Hour Reductions Should Be Viewed In Its "Totality" Fails To Raise Any Genuine Issue Of Material Fact.

With no evidentiary support in the record, the plaintiffs make numerous references in their brief to Wal-Mart's alleged "widespread practice" of making prospective reductions in pharmacists' base hours with concomitant changes in their salaries.  They argue that this "widespread practice" should be viewed in its "totality" and that, if so viewed, raises genuine issues of material fact precluding summary judgment.  For several reasons, that argument is untenable.

First, there is no evidence to support the claim that such a widespread practice existed.  Indeed, Wal-Mart's corporate policy regarding reductions in base hours due to slow business conditions was simple—it should not happen.  According to the testimony of James Martin, the Vice President in charge of Wal-Mart's Pharmacy Division, pharmacists' base hours should never be cut because of slow business or a lack of work.  Aplt. App. 292-94.  Indeed, on one occasion in April 1995, Martin received a complaint from a pharmacist who claimed to have had a reduced salary because of slow business, and Martin's response was to reiterate to every Wal-Mart Regional Manager that such reductions were contrary to Wal-Mart

policy. Aplt. App. 295. Moreover, the evidence in the record demonstrates that Wal-Mart's corporate policy was carried out in actual practice—of 573 opt-in plaintiffs, 432 never experienced any change in base hours at any time during the relevant period. Thus, the alleged "widespread practice" of making prospective base hour reductions simply did not exist.

Second, whether a "widespread practice" of making prospective base hour reductions existed is simply irrelevant to this case. After all, this Court has clearly held that an employer's practice of prospectively changing the base hours, and concomitantly the salaries, of its pharmacists "does not convert salaried employees to hourly employees entitled to overtime." *In Re Wal-Mart Stores, Inc.*, 395 F.3d at 1179. Accordingly, the "widespread practice" of prospective base hour reductions alleged by the plaintiffs, even if it existed, would have amounted to no more than a "widespread practice" of complying with the FLSA salary basis test.

Third, only if Wal-Mart had a "widespread practice" of changing pharmacists' base hours, and concomitantly their salaries, so often that their salaries became the functional equivalent of an hourly wage would the FLSA salary basis test be implicated. *Id*. Perhaps in recognition that no single pharmacist ever experienced such impermissibly frequent prospective base hour changes, the plaintiffs argue that base hour changes should be viewed in their "totality," and that, in their

"totality," pharmacists' prospective base hour changes were impermissibly frequent.

That argument makes no sense. Citing prospective base hour changes that individual pharmacists may have experienced in different parts of the country is not the equivalent of showing that any one pharmacist experienced prospective base hour changes so frequently that his or her salary became the functional equivalent of an hourly wage. Indeed, 1000 pharmacists each experiencing a single base hour change is simply not the same as a single pharmacist experiencing 1000 base hour changes. The former merely amounts to 1000 instances of changes which comply with the salary basis test. Only the latter might run afoul of that test.

Accordingly, the plaintiffs' claim that Wal-Mart had a "widespread practice" of making prospective base hour changes, even if true, does not raise any genuine issues of material fact, and the district court was correct to enter summary judgment in favor of Wal-Mart.  This Court should affirm the dismissal of the plaintiffs' claim.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's grant of summary judgment in favor of Wal-Mart and the dismissal of the plaintiffs' claim.

Respectfully Submitted,


/s/ Steven J. Merker
_____
Steven J. Merker
Gregory S. Tamkin
DORSEY & WHITNEY LLP
Republic Place Building, Suite 4700
370 17th Street
Denver, CO  80202
(303) 629-3400

*Counsel for Appellee Wal-Mart Stores, Inc.*

JUNE 25, 2007

## STATEMENT REGARDING ORAL ARGUMENT

In view of the factual and legal complexity of this case, Wal-Mart believes that oral argument would materially assist this Court, and therefore requests that this Court hear oral argument.

## CERTIFICATE OF COMPLIANCE

I hereby certify that, according to the word-count facility in Microsoft Word, this brief, excluding those portions omitted under Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), consists of 9,028 words, which is fewer than the number specified in Federal Rule of Appellate Procedure 32(a)(7)(B)(i).

/s/ Dianna Frogge
_____
Dianna Frogge,
Secretary to Steve Merker

Dated:  June 25, 2007

## CERTIFICATE OF DIGITAL SUBMISSION

I HEREBY CERTIFY THAT A COPY OF THE FOREGOING BRIEF OF

APPELLEE, as submitted in Digital Form is an exact copy of the written document

filed with the Clerk and has been scanned for viruses with the McAfee VirusScan

Enterprise 7.1.0, Virus Definition File Dated June 25, 2007 and according to the

program, is free of viruses.

 

 

 
                                                       _____

                                                       Steven J. Merker

 

                                                       By: /s/ Steven J. Merker

                                                       _____

                                                       Steven J. Merker

 

Dated:  June 25, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing BRIEF OF AP-PELLEE WAL-MART STORES, INC. was served by U.S. Mail to the following on this 25th day of June, 2007:

| | |
|---|---|
| Gerald L. Bader, Jr. | Franklin D. Azar |
| Renée B. Taylor | FRANKLIN D. AZAR |
| BADER & ASSOCIATES, LLC | & ASSOCIATES |
| 14426 East Evans Avenue, Suite 200 | 14426 East Evans Avenue |
| Denver, Colorado  80014 | Denver, Colorado  80014 |

Additionally, on the same date, a copy of the digital submission in electronic form was emailed to:

gbader@bader-associates.com

rtaylor@bader-associates.com

/s/ Steven J. Merker

Steven J. Merker

By: /s/ Steven J. Merker
Steven J. Merker (Digital)

June 25, 2007