**RELEVANT OPINIONS AND ORDERS**
**OF LOWER COURT**

1.  RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE CRAIG B. SHAFFER DATED JULY 25, 2006

2.  ORDER AND JUDGMENT OF DISMISSAL OF JUDGE ZITA L. WEINSHIENK DATED JANUARY 23, 2007

**1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Master Docket No. 96-cv-91139-ZLW-CBS
In Re:
Wal-Mart Stores, Inc. Fair Labor Standards Act Litigation -- MDL 1129

---

**consolidated Civil Action No. 95-cv-01705-ZLW-CBS**

BILLY PRESLEY, CINDY WACASTER, and JERRY ARCHULETA, for and on behalf of
themselves and other employees similarly situated,
     Plaintiffs,
v.

WAL-MART STORES, INC., a Delaware corporation,
     Defendant.

---

**and consolidated Civil Action No. 95-cv-02050-ZLW-CBS**

MICHAEL FIORENZI,
     Plaintiff,
v.

WAL-MART STORES, INC., a Delaware corporation, KURT BARRY, District Manager,
District #18, and RICHARD ROES, Nos. 1 through 5,
     Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

     This matter comes before this court on Defendant's "Motion for Summary Judgment or, in

the alternative, for Decertification" (filed March 8, 2006 (Doc. #582)). The court has reviewed

the motion, Plaintiffs' Response in Opposition (filed March 28, 2006 (Doc. #590)), Defendant's

Reply (filed April 17, 2006 (Doc. #602)), the exhibits and affidavits, the entire case file, the

Aplt.App.01048

arguments presented in open court, and the applicable law and is sufficiently advised in the premises. For the reasons discussed below, this court recommends that Defendant's Motion for Summary Judgment be granted.

## I. Background

These two consolidated cases[1] arise under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq. Plaintiffs are pharmacists previously or currently employed full-time by Defendant, Wal-Mart Stores, Inc. This litigation commenced in 1995, when two FLSA collective actions were filed, one in federal court (*Fiorenzi v. Wal-Mart Stores, Inc.,* Civil Action No. 95-cv-02050) and one in state court (*Presley v. Wal-Mart Stores, Inc.*). The *Presley* case was removed to the United States District Court for the District of Colorado *(Presley v. Wal-Mart Stores, Inc.,* Civil Action No. 95-cv-1705) and was later consolidated with *Fiorenzi. Fiorenzi* and *Presley* involve different plaintiffs, but the issues raised in each are identical.

The FLSA requires that employers provide overtime compensation to employees at one-and-a-half times their regular hourly rate for each hour worked over forty in a single workweek. 29 U.S.C. § 207(a)(2)(c). There is an exemption to this overtime requirement, however, for employees that have "professional" duties, provided that these employees are paid a salary in accordance with a "salary-basis" test. *See Auer v. Robbins*, 519 U.S. 452, 455 (1997); *see also* 29 C.F.R. § 541.3 (2003).

Plaintiffs allege that between August 1993 and August 1996, Defendant violated the FLSA by failing to pay overtime compensation when Plaintiffs worked more than forty hours per

---

[1] There is also one related but not consolidated case that is pending, *Yates v. Wal-Mart Stores, Inc.* (Civil Action No. 97-cv-00257).

-2-

week.   Plaintiffs contend that they are entitled to this overtime compensation because, under the salary-basis test, they were hourly rather than salaried employees.   Defendant argues that Plaintiffs were salaried professionals and, accordingly, fall within the professional exemption to the FLSA's overtime pay requirement.

Originally, Plaintiffs claimed that Defendant violated the FLSA's salary-basis test by (1) "partially docking" pharmacists' salaries when they were absent for part of a day, and (2) prospectively adjusting pharmacists' base hours – and concomitantly their salaries – in response to slow business conditions.   In 1999, the District Court granted summary judgment on this second element of Plaintiffs' claim, finding that Defendant had prospectively adjusted pharmacists' base hours in response to slowing pharmacy sales. *In re Wal-Mart Stores, Inc.*, 58 F. Supp. 2d 1219 (D. Colo. 1999).   The District Court held that Defendant's prospective base hour adjustments violated the salary-basis test and that consequently the FLSA's professional exemption to the overtime compensation requirement did not apply. *Id.*   The District Court also granted Plaintiffs' Motion for Approval of Collective Action. *Id.*; 95-cv-1705, April 8, 1996 (Doc. #64); 95-cv-2050, April 8, 1996 (Doc. #64); 97-cv-257, August 2, 1999 (Doc. #123); 96-cv-91139, August 2, 1999 (Doc. #150).

Before the case reached trial on the issue of partial-day docking, the parties entered into an agreement whereby Plaintiffs dismissed all claims except the claim for prospective base hour adjustments.   (Amended Joint Motion for an Order Entering Final Judgment (Doc. # 491)). Accordingly, this Court entered final judgment dismissing with prejudice all claims asserted by the Defendants except that of the prospective base hour adjustments.   (Order Entering Final Judgment, August 28, 2003 (Doc. #492)).

Aplt.App.01050

In 2005, the Tenth Circuit reversed the District Court's ruling on prospective base hour adjustments, holding that under the Department of Labor's controlling interpretation of the FLSA, "an employer may prospectively reduce salary to accommodate the employer's business needs unless it is done with such frequency that the salary is the functional equivalent of [] hourly wage[s]." *In re Wal-Mart Stores, Inc.*, 395 F.3d 1177, 1184 (10th Cir. 2005). Having found that Plaintiffs did not meet the threshold required for summary judgment, the Tenth Circuit remanded the case for further factual determinations about whether Defendant's prospective base hour adjustments rendered the employees' salaries the functional equivalent of hourly wages. *Id.* at 1180.

Defendant subsequently filed this Motion for Summary Judgment. Defendant argues that under the standard articulated by the Tenth Circuit, none of Plaintiffs ever experienced impermissibly frequent prospective base hour adjustments so as to render their salaries the functional equivalent of hourly wages. In the alternative, Defendant argues that Plaintiffs' collective action should be decertified.

## II. Standard of Review

A motion for summary judgment is appropriate only where there are no material issues of fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A party can establish the absence of a material issue of fact for the purpose of summary judgment by showing that the available evidence would be insufficient to sustain a verdict for the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Concrete Works, Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). To avoid summary judgment, the nonmoving party must either produce affirmative evidence demonstrating a material

-4-

issue of fact under Fed. R. Civ. P. 56(e) or explain why it cannot under Rule 56(f). *Pasternak v. Lear Petroleum Exploration*, 790 F.2d 828, 832 (10th Cir. 1986); *Weir v. Anaconda Co.*, 773 F.2d 1073, 1082 (10th Cir. 1985).

In applying the standard for summary judgment, a court views the evidence in a light most favorable to the non-moving party. *Bd. of Educ. v. Earls,* 536 U.S. 822, 849 (2002); *Exnicious v. United States*, 563 F.2d 418, 423 (10th Cir. 1977). Factual issues of controversy are resolved in favor of the nonmoving party, but only in the sense that "where the facts specifically averred by that party contradict facts specifically averred by the movant, the [summary judgment] motion must be denied." *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 888 (1990). A court, however, is not "obliged to resolve any factual ambiguity" in favor of the nonmoving party. *Id.* Viewing the evidence in a light most favorable to the nonmoving party "is a world apart from assuming that the general averments embrace the specific facts needed to sustain the complaint." *Id.* (internal quotation marks omitted). Instead, the nonmoving party is required to "set forth *specific facts* showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thomas v. Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024-25 (10th Cir. 1992).

## III. Analysis

### A. Introduction

The Tenth Circuit has held that an employer may prospectively reduce the base hours and concomitant salary of its employees without violating the FLSA's overtime compensation requirement provided that the prospective reductions do not occur with such frequency that the

-5-

salary becomes a "sham" and "the functional equivalent of hourly wages." *In re Wal-Mart Stores, Inc.*, 395 F.3d at 1178-79.

To withstand summary judgment, Plaintiffs may not simply rely upon evidence showing occasional prospective base hour adjustments or ambiguous evidence for frequent base hour adjustments. Instead, Plaintiffs must introduce specific evidence that would allow a reasonable jury to determine that individual pharmacists experienced prospective base hour adjustments so frequently that their salaries were "shams" and the functional equivalent of hourly wages. Plaintiffs' failure to introduce such evidence compels this court to recommend that Defendant's Motion for Summary Judgment be granted.

## B. The Tenth Circuit Standard

The FLSA does not precisely address the circumstances in which the professional exemption to the overtime compensation requirement applies – instead, it delegates the responsibility of "defin[ing] and delimit[ing]" the exemption to the U.S. Department of Labor ("DOL"). 29 U.S.C. § 213(a)(1). One criterion the DOL uses in identifying an employee as an exempt professional is a "salary-basis test." *See* 29 C.F.R. § 541.3(e).[2] If an employee "regularly receives each pay period . . . a predetermined amount constituting all or part of [the agreed] compensation," the employer satisfies the salary-basis test and that employee is paid on an exempt basis under the FLSA. *Id.* at § 541.118(a).

In its *In re Wal-Mart Stores, Inc.* decision, the Tenth Circuit interpreted the DOL's salary-basis test as prohibiting an employer from reducing pay within a particular pay period, but not

---

[2] The phrase "salary-basis test" is not found within 29 C.F.R. § 541.3(e), but courts have referred to this section as the "salary-basis test." *See, e.g., Auer*, 519 U.S. at 455; *In re Wal-Mart Stores, Inc.*, 395 F.3d at 1183.

Aplt.App.01053

from making prospective base hour adjustments that affects future pay periods. 395 F.3d at 1184

("[The DOL's regulation] prohibits various deductions from the contractual salary, but it contains

no explicit requirement that the salary set ('determined') for one pay period be continued to the

next."). Under the Tenth Circuit's interpretation, therefore, Wal-Mart could prospectively adjust

its pharmacists' base hours in light of changing business conditions without being subject to the

FLSA's overtime compensation requirement. *Id.* at 1186.

    In support of its interpretation, the Tenth Circuit cited three official DOL opinion letters[3]

addressing employers who, "when facing economic slowdowns, inquired whether reducing the

work schedule of their salaried employees with a corresponding reduction in pay would render the

employees subject to the FLSA overtime provisions . . . ." *Id.* at 1185. Each of the DOL opinion

letters, the appellate court noted, confirmed that the salary-basis test "does not preclude an

employer from making occasional prospective salary reductions before the affected pay period in

response to business needs." *Id.*

    The DOL opinion letters cited by the Tenth Circuit provide insight into what constitutes

permissible prospective base hour adjustments. In one letter, the DOL informed an employer

wanting to reduce costs at the end of a calendar year that "[a] reduction in salary resulting from a

temporary reduction in the normal workweek . . . is . . . permissible and will not defeat an

otherwise valid exception." U.S. Department of Labor, *Wage and Hour Opinion Letter dated

November 13, 1970*, 1970 WL 26462, at 1. In a second letter, the DOL permitted an employer to

---

[3]Such opinion letters have "a provenance and legal effect" that provide "great weight" in interpreting the DOL regulations. *In re Wal-Mart Stores, Inc.*, 395 F.3d at 1184; *see also Auer*, 519 U.S. at 461 ("Because the salary-basis test is a creature of the Secretary[] [of Labor's] own regulations, his interpretation of it is . . . controlling unless plainly erroneous or inconsistent with the regulation.") (internal quotation marks omitted).

Aplt.App.01054

reduce employees' base hours by eight hours per week in response to a reduction in state

appropriations. U.S. Department of Labor, *Wage and Hour Opinion Letter dated March 4,*

*1997,* 1997 WL 998010, at 1. In response to a third employer's request to reduce the base hours

and salary of employees for the remainder of a fiscal year due to "persistent work shortages," the

DOL said that such a reduction satisfies its salary-basis test. U.S. Department of Labor, *Wage*

*and Hour Opinion Letter dated February 23, 1998,* 1998 WL 852696, at 2.

An employer may be liable for overtime compensation under the FLSA, however, if it

makes prospective base hour adjustments to its employees' base hours so frequently that

their salaries become a "sham" and "the functional equivalent of [] hourly wage[s]." *In re Wal-*

*Mart Stores, Inc.,* 395 F.3d at 1189. At various points in its opinion, the Tenth Circuit provides

guidance about when such adjustments become impermissibly frequent. Prospective base hour

adjustments that are not "too common," but that are instead "occasional" – such as the temporary

adjustments reflected in the DOL opinion letters – are permissible under the salary-basis test. *Id.*

at 1185-86. Prospective base hour changes occurring so frequently that the corresponding salary

fluctuates as if it could be an hourly wage, however, are a "pervasive manipulation" of the salary

and render it a "sham." Id. at 1188-89. *See Caperci v. Rite Aid Corp.,* 43 F. Supp.2d 83, 97 n.14

(D. Mass. 1999) (prospective base hour adjustments that occur every week are impermissible

under the salary-basis test); *Thomas v. County of Fairfax,* 758 F. Supp. 353, 355-56 (E.D. Va.

1991) (prospective base hour adjustments that occur every other week are impermissible under

the salary-basis test).

Aplt.App.01055

**C. Plaintiffs' Evidence of Prospective Base Hour Changes[4]**

At the outset, this court notes that the Tenth Circuit previously observed that "[t]he record . . . indicates that Wal-Mart rarely reduced salaries of full-time pharmacists." *In re Wal-Mart Stores, Inc.*, 395 F.3d at 1189. Despite this observation and the clear guidance provided by the Tenth Circuit about when prospective base hour adjustments are impermissibly frequent, Plaintiffs have not introduced sufficient evidence to support their claim that Defendant made frequent prospective base hour changes to pharmacists' schedules. In addition, virtually all of Plaintiffs' evidence was gathered at a time in which the lawsuit included a contemporaneous "partial-day docking" claim as well as the claim for prospective base hour changes. Consequently, the exhibits contain a large amount of now-irrelevant information relating to claims no longer within the scope of this lawsuit.[5]

Defendant asserts that in light of the Tenth Circuit's decision in *In re Wal-Mart Stores, Inc.*, any prospective base hour changes that may have occurred to Plaintiffs' schedules were not, as a matter of law, "impermissibl[y] frequen[t]" so as to render the salaries a sham and the functional equivalent of hourly wages. (Motion for Summary Judgment, p. 9). In response, Plaintiffs argue that the exhibits – including pharmacist affidavits, payroll history reports, and evidence of Defendant's practices and budgetary concerns – show that Defendant made impermissibly frequent prospective base hour adjustments to its pharmacists' schedules across the

---

[4] Though all of Plaintiffs' exhibits are not individually discussed in this section, the court has reviewed each of them carefully.

[5] *See infra* section III(D).

-9-

Aplt.App.01056

country.[6]  (Response, pp. 2-3).  At the very least, Plaintiffs argue, the evidence demonstrates an issue of material fact that precludes summary judgment.  (Response, p. 3).

Under any formulation of the Tenth Circuit's standard, however, Plaintiffs' evidence would be insufficient for a reasonable jury to conclude that Defendant's salaries were the functional equivalent of hourly wages.  The evidence shows that, in cases where prospective base hour reductions to pharmacists' salaries clearly occurred, Defendant made them only "occasionally."  As a matter of law, they were neither "too common" nor sufficiently frequent to represent a "pervasive manipulation" of the pharmacists' salaries.

**1. Pharmacist Affidavits (Exhibits 1-21)**

The pharmacist affidavits do not provide evidence of frequent prospective base hour adjustments by Defendant. Indeed, only seven of the twenty-one affidavits indicate such adjustments occurred.   Of these seven, six show a single occurrence of a prospective base hour adjustment: Exhibit 5 (45 to 40 hours per week); Exhibit 10 (45 to 40 hours per week); Exhibit 14 (45 to 44.5 hours per week); Exhibit 18 (45 hours to 40 hours per week); Exhibit 20 (45 hours to 40 hours per week); and Exhibit 21 (90 hours per biweekly pay period to 79 hours per biweekly pay period).  The seventh affidavit, Exhibit 17, shows two prospective base hour adjustments: 90 hours per pay period to 81 hours, and a subsequent reduction ten years later to 60 hours per pay period.

---

[6] The exhibits show that prospective base hour adjustments were not localized in a particular district. *See, e.g.,* Exhibit 5 (Arkansas), Exhibit 17 (Missouri), Exhibit 18 (Maine), Exhibit 20 (Oklahoma), Exhibit 25 (Texas), Exhibit 43 (Colorado), Exhibit 48 (Florida).

-10-

### 2. Pharmacist Payroll Histories (Exhibits 22-42)

The "Base Hours" column in each of the pharmacist payroll histories corresponds to the number of base hours each pharmacist had during a particular pay period, and changes in this column reflect prospective base hour adjustments to pharmacists' schedules.[7] In some payroll histories, Defendant's District Managers would make a notation of these base hour adjustments in the "Reason" column as well. *See, e.g.*, Exhibit 32 (10/13/95 notation reads: "winter months - base up to 79 hrs."). Some of the payroll histories contain a number of these base hour notations in the "Reason" column. *See, e.g.*, Exhibit 24.

Plaintiffs assert that the payroll histories show that in addition to the formal changes reflected in the "Base Hours" column, Defendant also made frequent informal – or "verbal" – base hour changes to its pharmacists' schedules. (Response p. 16). To support this assertion, Plaintiffs rely in part upon the multiple handwritten "verbal baseline adjustment" (or similar) notations contained in some of the payroll histories in the "Reason" column. Plaintiffs specifically cite the payroll histories in Exhibit 23, Exhibit 24, Exhibit 25, Exhibit 26, and Exhibit 34 as evidence of "repeated and recurrent" prospective base hour adjustments. (Response p. 16). Plaintiffs do not, however, provide any evidence to support the assertion that each "base hour" notation in the "Reason" column represents a separate prospective base hour change, other than by citing

---

[7] Both parties agree that this column reflects both base hours as well as prospective base hour adjustments. *See, e.g.*, p. 7 of Defendant's Reply, citing the deposition of District Manager Mark Schneider (Defendant's Exhibit E) as showing the entry in the "Base Hours" column reflects the employee's "actual" base hours. Plaintiffs also rely on the "Base Hours" column as reflecting the changes to pharmacists' base hours. *See* Response p. 16 (citing the two base hour adjustments reflected in Exhibit 40). An exception to this is Exhibit 34, where there is no change made under the "Base Hours" column but Defendant concedes a base hour reduction took place. (Reply, p. 8).

-11-

Aplt.App.01058

evidence of fluctuating pay rates.[8]  The failure to link each notation to a separate base hour adjustment considerably weakens Plaintiffs' assertion of multiple base hour adjustments.

On the other hand, Defendant is able to cite evidence supporting its claim that the multiple "base hour" notations in the "Reason" column are not indicative of multiple base hour adjustments, but instead refer to the more infrequent base hour adjustments contained in the "Base Hours" column.  Defendant cites the deposition of Mark Schneider (Exhibit E), the District Manager responsible[9] for the multiple notations in Exhibit 23, Exhibit 24, Exhibit 25, and Exhibit 26.  In his deposition, Schneider testified that each pharmacist's "actual" base hours – including any prospective adjustments to these hours – were indicated in the "Base Hour" column.  (Exhibit E).  Defendant explains that it used the payroll histories to determine if pharmacists "would receive compensation for instances in which they reported 'actual hours' less than 'base hours.'" (Reply, pp. 7-8, n.7).  The multiple "base hour" notations in the "Reason" column, therefore, are not indicative of multiple changes in pharmacists' base hours, but refer rather "to the reason why a difference between the printed number of base hours and the number of 'actual hours' did not result in a payment to the pharmacist."  (Reply, pp.7-8, n.7).  Defendant's explanation is consistent with the payroll histories in Exhibit 23, Exhibit 24, Exhibit 25, and Exhibit 26 – with virtually every base hour notation in the "Reason" column occurring when a pharmacist's "actual hours" were less than his or her "base hours."

Further evidence that multiple notations under the "Reason" column are not themselves

---

[8]The court rejects this argument *infra*, section III(D)(2).

[9]Defendant's Exhibit E and Defendant's Exhibit F show that Schneider was responsible for the notations in the payroll histories of pharmacists Mary Wagner (Exhibit 23) and Mark Solack (Exhibit 24).  Exhibit 25 and Exhibit 26 are from the same district.

-12-

Aplt.App.01059

indicative of multiple prospective base hour adjustments is found in the final payroll history

Plaintiffs cite that contains multiple "base hour" notations – that of pharmacist Steven Justice

(Exhibit 34). Justice's payroll history contains a number of "base change due to 9 hr. Sat"

notations, which refer to base hour adjustments resulting from changed store hours.[10]  Once a

nine-hour Saturday is scheduled, subsequent nine-hour Saturdays do not represent additional

prospective base hour adjustments. This exhibit does not therefore demonstrate the "repeated and

recurrent" base hour adjustments as Plaintiffs argue, but rather a single occurrence of a

prospective base hour reduction. Finally, pharmacist Billy King's affidavit (Exhibit 14) shows that

King experienced a single base hour adjustment during the relevant time period – from 45 hours

per week to 44.5 hours per week.[11]  Yet King's payroll history (Exhibit 22) contains several "D-

verbal agreement" notations in the "Reason" column of the payroll history. The notations are

therefore not indicative of separate informal or "verbal" base hour adjustments.

     An examination of the exhibits reveals that, like the pharmacist affidavits, the pharmacist

payroll histories do not indicate frequent prospective base hour adjustments. In fact, two of

Plaintiffs' payroll histories contain no indication of such adjustments: Exhibit 27 has a consistent

"90" in the "Base Hours" column and no entries under the "Reason" column that would suggest

prospective adjustment. Similarly, Exhibit 39 has no changes in the "Base Hours" column, and

---

[10]Tying a pharmacist's base hours to a store's opening hours was not uncommon. *See* Kurt Barry
Deposition (Exhibit 43) at p.8, lines 20-24 ("full days is how the base compensation was derived"); If Plaintiffs'
assertions about weekly base hour changes are true, it would also mean that in some cases Defendant would change
the opening hours of its stores each week. Such weekly store-hour changes would be highly impractical, especially
considering the logistical changes entailed by changing the opening hours. *See, e.g.*, Exhibit 66, discussing the
"new signing" required every time a pharmacy changes opening hours.

[11]The affidavit and the payroll history indicate a single prospective base hour change, though the exact
date of the change is different in each.

-13-

Aplt.App.01060

the notations in the "Reason" column do not indicate prospective base hour adjustments.

A majority of the payroll histories indicate a single base hour adjustment: Exhibit 22 (90 to 89 hours per pay period on 8/4/95), Exhibit 24 (97 to 90 on 8/4/95); Exhibit 25 (93 to 83 on 7/7/95); Exhibit 26 (97.5 to 92.5 on 2/18/94); Exhibit 28 (90 to 80 on 1/5/96); Exhibit 29 (80 to 56 on 7/21/95); Exhibit 30 (90 to 89 on 4/15/94); Exhibit 31 (89 to 79 on 6/9/95); Exhibit 33 (90 to 89 on 4/15/94); Exhibit 34 (90 to 89 on 5/13/94); Exhibit 35 (90 to 88 on 9/1/95); Exhibit 36 (84 to 81 on 6/24/94?); Exhibit 37 (81 to 90 on 1/5/96); Exhibit 41 (90 to 54 on 10/27/95); and Exhibit 42 (90 to 81 on 6/7/96).

Four of the payroll histories show two prospective base hour adjustments: Exhibit 23 (104 to 103 on 1/6/95, then 103 to 84 on 7/7/95); Exhibit 32 (90 to 60 on 4/15/94, then 60 to 79 on 10/13/95); and Exhibit 40 (90 to 89 on 10/13/95, then 89 to 79 on 1/5/96). Exhibit 38 is unclear, though the notations also appear to show two changes (100 to 80 on 2/2/96, then 80 to 79 on 5/24/96).

### 3. Other Evidence for Prospective Changes

#### a. District Manager Depositions, Other Evidence (Exhibits 43-75)

Only three of the six District Manager depositions provide evidence of prospective base hour adjustments. There is nothing within these depositions, though, that would suggest particular pharmacists experienced frequent base hour adjustments: Exhibit 46 (Deposition of Mark Schneider) describes a single base hour reduction due to slowing pharmacy sales; Exhibit 48 (Deposition of Mitch Ziobro) describes base a rate change made to several pharmacists' schedules due to a "seasonal" change in pharmacy sales; Exhibit 43 (Deposition of Kurtis Barry) references

-14-

Aplt.App.01061

a single base hour change for a pharmacist following a change in store hours. Barry's deposition

also indicates that other pharmacists at stores within his district had experienced similar

reductions in some cases "when business decreased." (Exhibit 43) Plaintiffs cite Barry's testimony

prominently in their Response brief, though his deposition does not indicate that any one

pharmacist ever experienced more than a single prospective adjustment to his or her base hours.

    The other exhibits that relate to prospective base hour adjustments are evidence of only a

single occurrence of such an adjustment. Pharmacist Donna Burcham's signed acknowledgment

of a base hour reduction (Exhibit 67) references only one prospective base hour adjustment.

District Manager Norm Beck's Memorandum to his district pharmacy managers (Exhibit 66)

discussing a change in base hours among stores is also evidence of no more than a single

prospective base hour adjustment.[12]

### b. Employment Record Summaries (Exhibit 58, Defendant's Exhibit A[13])

    The parties' own summaries of Defendant's employment records during the relevant period

show that only a minority of the opt-in Plaintiffs experienced a single prospective base hour

adjustment, a smaller minority experienced two, and only a few pharmacists experienced three or

four prospective base hour adjustments during the relevant period.[14] Plaintiffs' expert concluded

that among the 950 *Presley* and *Yates* collective action members, only 19.68 percent experienced

---

[12] Although Exhibit 66 references a number of stores and pharmacists with changed base hours, there is only evidence of one prospective base hour adjustment – that is, the memorandum indicates that pharmacists in the different stores each experienced only a single adjustment to their base hours.

[13] Doc. #582.

[14] *See* Exhibit 58 (Plaintiffs' expert's summary of the *Presley* and *Yates* data) and Defendant's Exhibit A (summary of the *Presley* data).

Aplt.App.01062

a single prospective base hour adjustment, and only 6.74 percent experienced more than one such adjustment. (Exhibit 58). Plaintiffs do not provide any greater specificity about the number of "multiple" base hour adjustments each pharmacist experienced, nor the time that elapsed between each adjustment.

Defendant has summarized data from the 573 members of the *Presley* collective action, and with respect to those pharmacists, Defendant's data generally match that of Plaintiffs. (Motion for Summary Judgment, pp. 4-9).[15] Among the 573 *Presley* opt-in pharmacists, approximately 17 percent experienced a single base hour adjustment; less than six percent experienced two base hour adjustments; and less than two percent experienced three or four prospective base hour adjustments. (Motion for Summary Judgment pp. 4-5). Defendant has also shown that even when individual pharmacists experienced more than one prospective base hour adjustment, such adjustments were virtually always dispersed over a significant period of time. (Motion for Summary Judgment, pp. 5-9; Defendant's Exhibit A).

None of the employment data provided by either Plaintiffs or Defendant contain evidence that any pharmacist experienced more than four prospective base hour adjustments, or that these adjustments occurred with any greater frequency.

### 4. Application to the Present Case

The Tenth Circuit's decision in *In re Wal-Mart Stores, Inc.* made it clear that Defendant could prospectively adjust its pharmacists' base hours in response to declining prescription sales

---

[15] According to Defendant's summary of Plaintiffs' data, the employment records correspond closely. Due to a small number of missing records, however, there are some slight variations. One such variation is that Defendant has identified two employees having experienced four prospective base hour adjustments, whereas Plaintiffs have not identified any employee experienced four. (Motion for Summary Judgment, p.6).

-16-

Aplt.App.01063

while remaining exempt from paying overtime under the FLSA. Consequently, Plaintiffs must do more than cite evidence of prospective base hour adjustments if they are to withstand summary judgment in this case. Instead, they must also present evidence that would allow a reasonable jury to conclude that Defendant's base hour changes occurred with such frequency that Plaintiffs' salaries became a "sham" and the functional equivalent of hourly wages. Applying any formulation of the Tenth Circuit standard to the available evidence reveals, however, that as a matter of law, none of Plaintiffs experienced prospective base hour adjustments that were either "too common" or which represented a "pervasive manipulation" of the salaries by Defendant. Plaintiffs' evidence would not permit a reasonable conclusion that the pharmacists' salaries were converted into the functional equivalent of hourly wages by frequent prospective base hour reductions. As such, Plaintiffs' evidence of prospective base hour adjustments is insufficient to withstand summary judgment.

Plaintiffs assert that the prospective base hour changes reflected in the record show that "[t]he practice of reducing base hours for ongoing business demands was widespread throughout the relevant time period and throughout the country . . . ." (Response p.13). Plaintiffs' evidence does indeed indicate that a number of pharmacists in different parts of the country experienced prospective base hour adjustments. But in the context of the standard articulated by the Tenth Circuit, such evidence is inadequate. Citing prospective base hour adjustments that occurred in individual instances in different parts of the country is not the equivalent of showing that any one opt-in pharmacist experienced prospective base hour adjustments with such frequency that a reasonable jury could determine that the pharmacist's corresponding salary was a sham. Indeed, the infrequent base hour adjustments Plaintiffs cite are precisely the type permitted by the Tenth

-17-

Circuit under *In re Wal-Mart Stores, Inc.*

The record shows that only a minority of the Plaintiffs experienced *any* prospective base hour adjustments during the relevant time period. (Exhibit 58, Defendant's Exhibit A).[16] Of the minority of pharmacists experiencing any prospective base hour adjustments, most experienced such an adjustment only once. (Exhibit 58, Defendant's Exhibit A). A number of the exhibits discussed thus far appear to reflect some of these one-time adjustments.[17] When they occur only once, Defendant's prospective base hour adjustments are no different than the prospective base hour adjustments examined by the Tenth Circuit. Under the rule articulated in *In re Wal-Mart Stores, Inc.*, Defendant is clearly allowed to make such one-time adjustments. As a matter of law, therefore, Defendant's one-time prospective base hour adjustments do not subject it to the overtime pay requirement of the FLSA.

The employment records indicate that less than six percent of all opt-in Presley Plaintiffs experienced two prospective base hour adjustments. (Defendant's Exhibit A, Motion for Summary Judgment, pp. 5-6).[18] [19] The DOL opinion letters referenced in *In re Wal-Mart Stores, Inc.* show that two prospective base hour adjustments are also insufficient to convert an employee's salary into the functional equivalent of hourly wages. In the first DOL letter, a

---

[16] *See supra*, section III(C)(3)(b).

[17] *See supra*, section III(C)(1)-(3).

[18] As stated above, Defendant's figures relate only to the Presley collective action pharmacists. Defendant claims its data corresponds closely – though not exactly – to Plaintiffs' data with respect to these pharmacists. This court is unable to find, however, where Plaintiffs have summarized the data so as to distinguish pharmacists that had two, three, or four prospective base hour adjustments.

[19] The court is not making a recommendation on the issue of decertification. Given the relatively few number of people experiencing multiple prospective base hour adjustments, however, there is a question in the court's mind as to whether the Plaintiffs here are similarly situated.

-18-

Aplt.App.01065

"temporary reduction" in the base hours and salary for employees occurring at the end of a calendar year is deemed permissible under the FLSA. U.S. Department of Labor, *Wage and Hour Opinion Letter dated November 13, 1970*, 1970 WL 26462, at 1. Once the calendar year ends and the "temporary reduction" in base hours is no longer necessary, presumably the employer would be free to make a second prospective base hour adjustment, restoring employees' base hours to their previous levels. Likewise, the third DOL letter states that a prospective base hour adjustment made until the end of a company's fiscal year is also permissible under the FLSA. U.S. Department of Labor, *Wage and Hour Opinion Letter dated February 23, 1998*, 1998 WL 852696, at 2. The company would presumably be allowed to readjust the base hours of its employees once the new fiscal year began.

Accordingly, Defendant's practice of reducing pharmacists' hours during the slow summer months were instances of temporary but permissible base hour reductions. *See, e.g.*, Exhibit 32 (5/12/95 notation reads "verbal agreement to change base to 60 hours," and a 10/13/95 notation reads: "winter months - base up to 79 hrs."); *see also* Exhibit 48 (District Manager Mitch Ziobro testifying that base hours were adjusted seasonally due to increased business in the winter). Furthermore, among pharmacists experiencing two prospective base hour adjustments, the shortest time between those two adjustments was eight weeks. (Defendant's Exhibit A; Motion for Summary Judgment, p. 6). Because two prospective base hour adjustments are permissible under the DOL's interpretation, as a matter of law, Defendant's seasonal base hour adjustments do not subject it to the overtime pay requirement of the FLSA.[20]

---

[20] Note that not all employees experiencing two prospective base hour adjustments experienced such adjustments due to seasonal business requirements. *See, e.g.*, Exhibit 17, showing prospective base hour adjustments spaced ten years apart.

-19-

Aplt.App.01066

According to Defendant, less than two percent of all Plaintiffs in the Presley class experienced either three or four prospective base hour reductions during the relevant period.[21] Defendant's analysis shows that among these pharmacists, the average period over which the prospective changes were made was more than four years. (Defendant's Exhibit A; Motion for Summary Judgment, pp. 7-8). Defendant's evidence also shows that the average time between each prospective base hour change was significant. (Defendant's Exhibit A; Motion for Summary Judgment, pp. 7-8). The infrequency of these prospective base hour changes would not permit a reasonable jury to find that the pharmacists' base hours were changed so often so as to convert their salaries into the functional equivalent of hourly wages. Three or four base hour changes over the course of more than four years are neither "too common," nor do they indicate a "pervasive manipulation" of the employees' salaries by Defendant.

Indeed, Defendant's prospective base hour changes stand in sharp contrast to the frequent – e.g., weekly or biweekly – base hour changes that the Tenth Circuit contemplated in *In re Wal-Mart Stores, Inc.* when referencing adjustments that rendered salaries a sham and the functional equivalent of hourly wages. As a matter of law, therefore, the prospective base hour changes reflected in the record did not render the pharmacists' salaries the functional equivalent of hourly wages, but were permissible under the salary-basis test and thus under the FLSA.

### D. Plaintiffs' Ambiguous Evidence for Prospective Base Hour Changes

Plaintiffs acknowledge that Defendant appears to have made only infrequent prospective

---

[21] Again, Plaintiffs have not sought to adduce a meaningful analysis of the base hour adjustments in each class – there are thus no conflicting facts with respect to these employment records.

Aplt.App.01067

base hour changes to pharmacists' schedules.[22]  Plaintiffs allege, however, that while actual

"formal" base hour adjustments may have taken place only "[o]n a few occasions," the number of

a particular pharmacist's base hours "was merely a hypothetical benchmark" informally

manipulated by the Defendant.  (Response pp.15-16).  Plaintiffs argue that Defendant, motivated

by budgetary considerations, made "verbal" base hour changes on a much more frequent basis.

(Response, pp. 15-16).  This argument distinguishing "formal" base hour adjustments from

"actual" base hour adjustments ultimately fails, however, because much of the evidence upon

which it relies does not identify prospective base hour adjustments.

### 1. Prospective Base Hour Adjustments and Adjustments Made Within a Pay Period

In contrast to schedule adjustments that take place during a pay period as a result of

events during that pay period, prospective adjustments take effect in a future pay period and entail

changes in the number of base hours that an employee is scheduled to work. *In re Wal-Mart*

*Stores, Inc.*, 395 F.3d at 1184.  The parties in this case previously agreed that the Plaintiffs' only

remaining claim is that Defendant *prospectively* reduced the Plaintiffs' base hours in response to

changing business conditions. (Order Entering Final Judgment, August 28, 2003 (Doc. # 492)).

According to the parties' agreement narrowing the parameters of the case, any

adjustments that the Defendant may have made to pharmacists' schedules *during* a pay period, for

whatever reason, are no longer at issue.  It is not altogether clear whether Plaintiffs recognize this.

For example, Plaintiffs' Response brief includes arguments about "[s]alary reductions . . . made in

response to events *within the pay period* for which salaries had been set" (p. 3, emphasis added)

---

[22]Referencing Plaintiffs' expert Jeffrey Opp's conclusions in Exhibit 58, Plaintiffs concede that only a
minority of the opt-in pharmacists had their base hours "formally" changed.  (Response p.15).

Aplt.App.01068

as well as an entire section addressing "Reductions in Pay. . . Made in Response to Events that Arose in the Periods for Which the Pay Had Been Set." (Response pp. 21-22).

Although prospective base hour changes are the sole remaining issue in this case, Plaintiffs' arguments from the evidence often conflate prospective base hour changes with other types of changes – i.e., adjustments made by Defendant within a pay period or at the request of the employee.  For example, Plaintiffs cite a number of pharmacist affidavits[23] in their discussion of the now-irrelevant issue of pay reductions occurring during pay periods.  (Response pp. 21-22).  Plaintiffs also cite a number of these same affidavits as evidence of prospective base hour changes, but fail to distinguish the parts of the affidavits that represent prospective base hour changes from the parts representing contemporaneous pay period adjustments.  *See, e.g.,* Plaintiffs' Response, p. 14.

Much of what Plaintiffs offer in opposition to summary judgment is thus ambiguous as to the crucial question of Defendant's prospective base hour changes.  A reasonable jury could not conclude from this ambiguous evidence that frequent prospective base hour adjustments had occurred as opposed to other contemporaneous employer-initiated or employee-initiated adjustments.  As such, this evidence is insufficient to withstand summary judgment.

### 2. Fluctuations in Compensation

To support the claim that Defendant made frequent prospective changes to its pharmacists' schedules, Plaintiffs cite evidence that pharmacists experienced fluctuations in the number of hours worked and the concomitant salaries paid.  Plaintiffs assert that the pay stubs

---

[23]Exhibit 1, Exhibit 3, Exhibit 4, Exhibit 6, Exhibit 7, Exhibit 8, Exhibit 9, Exhibit 10, Exhibit 11, Exhibit 13, Exhibit 14, Exhibit 15, Exhibit 17, Exhibit 20, and Exhibit 21.

-22-

Aplt.App.01069

contained in Exhibit 1, Exhibit 4, Exhibit 13, Exhibit 14, Exhibit 17, Exhibit 20, Exhibit 55, Exhibit 59, Exhibit 61, and the earnings history reports in Exhibit 57 show the pay fluctuations that individual pharmacists experienced while employed by Defendant.  (Plaintiff's Response, pp. 7-9).  Plaintiffs claim it is "undisputed" that these fluctuations result from Wal-Mart's using the number of hours worked as the basis for its pharmacists' weekly payroll (Response,  p. 6), and have marshaled evidence showing that the resulting salaries "fluctuated depending on the demands of sales and budget directives." (Response, p. 1).

Such fluctuations may be "undisputed" simply because they do not prove the issue at hand.  Fluctuations in pay rates and hours worked are no more indicative of prospective base hour changes than they are of schedule changes that occur during a pay period.  What Plaintiffs cite here as evidence of prospective docking could just as easily be explained as the result of scheduling adjustments made *during* a pay period, either by the Defendant or at the request of the employee.  Indeed, in many cases the latter explanations are probable.

For example, the pay stubs attached to the affidavit of Ghassan Abdalla (Exhibit 1) show fluctuations in the number of hours worked and pay received.  Abdalla's payroll history (Exhibit 38) contains a number of handwritten notations – i.e. "days off" – indicating that the pay fluctuations in a number of instances resulted from time worked less than what was scheduled as opposed to base hour schedule adjustments.  The Michael Fiorenzi deposition (Exhibit 7) provides another example of schedule adjustments made during the course of a pay period: "On several occasions . . . pharmacists would be informed that someone would need to 'go home' during those times which were less busy, especially the summer months."  Though Plaintiffs cite it in a discussion of prospective reductions, District Manager Larry Talley's deposition (Exhibit 47) also

-23-

references occasions in which pharmacists were told to "go home" during the course of the day. Contemporaneous pay period adjustments by Defendant are therefore a reasonable – and in some cases probable – alternative explanation for the fluctuating pay rates among pharmacists.

The notations in Abdalla's payroll history (Exhibit 38) do not reveal whether the "days off" came at the request of Defendant or Abdalla himself. It was not uncommon, however, for employees to request time off from work. For example, District Manager Kurtis Barry testified that "[one employee] requested to work less than her base oftentimes . . . ." (Defendant's Exhibit H). Pharmacist Scott Hanson testified that "[o]n some occasions, I took fractions of a day off because of illness or Family matters. My pay check was docked for that part of the day which I missed." (Exhibit 10). Also, the Pharmacist Payroll History for Crystal Robert (Exhibit 39) contains two notations indicating "requested time off." Thus, employee-initiated schedule adjustments could just as easily explain many of the pay fluctuations that Plaintiffs attribute to prospective base hour adjustments.

For a reasonable jury to conclude that the Defendant made *prospective* base hour adjustments so frequently that the salary was the functional equivalent of hourly wages, Plaintiffs must do more than simply point at fluctuations in pay rates and hours worked. Instead, some evidence must be advanced that would connect the fluctuations indicated by the pay stubs to actual prospective base hour changes. As submitted, however, Plaintiffs' evidence of variable pay rates does *not* distinguish possible prospective changes from those changes that occurred within a pay period or at the request of the employee. Plaintiffs have not introduced evidence to establish the requisite connection that would allow a finder of fact to conclude that such pay variations show what the Plaintiffs assert they show.

-24-

In the absence of any evidence clearly connecting the pay rate fluctuations to prospective base hour adjustments, the exhibits provide the basis for nothing more than an assumption by the Plaintiffs. This court will not construe such an assumption as sufficient grounds to establish an issue of material fact upon which to reject Defendant's Motion for Summary Judgment.

### 3. Pharmacist Affidavits (Exhibits 1-21)

The majority of the pharmacist affidavits – like the evidence for fluctuating pay rates – do not allow for a distinction between prospective base hour changes and scheduling changes occurring during a pay period. A large number of the affidavits include a sentence that reads: "In some instances, my District Manager . . . requested that I work less than my regularly scheduled week," or something nearly identical to it.[24] Such language does not suggest prospective base hour changes. Even if read broadly, the phrase is simply too ambiguous to allow a reasonable conclusion that the indicated changes are prospective.

Some affidavits provide additional context, but in most cases the context is not dispositive concerning the question of prospective base hour adjustments. Pharmacist Jim Ater (Exhibit 2) refers to "chain calls" made among pharmacies reducing pharmacists' hours, but these appear to be scheduling changes that occurred within a pay period. Pharmacist Jeff Kvederis' affidavit (Exhibit 15) also indicates contemporaneous pay period adjustments: "usually in the summer and anytime when the store was not busy, [the District Manager] requested that I leave early." Pharmacist Elma Jean (Exhibit 13) references being "schedule[d] . . . for less than the 10 hour shift," but it is unclear whether this indicates a schedule adjustment occurring during a pay period or a

---

[24]*See* Exhibit 1, Exhibit 2, Exhibit 3, Exhibit 5, Exhibit 8, Exhibit 9, Exhibit 10, Exhibit 11, Exhibit 12, Exhibit 13, Exhibit 14, Exhibit 17, Exhibit 20, and Exhibit 21.

Aplt.App.01072

prospective base hour adjustment. Pharmacist Ronald Moore's affidavit (Exhibit 16) is similarly unclear – failing to distinguish any prospective base hour reductions from those that may have occurred within a pay period.

As presented, the affidavits do not provide a sufficient basis upon which this court could determine the existence of an issue of material fact with respect to the question of frequent prospective base hour adjustments.

### 4. Evidence of Defendant's Budgetary and Financial Concerns (Exhibits 43-75)

Plaintiffs allege that "[a]t the heart of Wal-Mart's actual compensation practices was its primary concern for budgetary and sales considerations." (Plaintiffs' Response p. 9). Plaintiffs put forward a large amount of evidence – including deposition excerpts, memoranda, affidavits, and other documentation – purporting to show that Defendant accordingly adjusted the schedules of its pharmacists in order to maximize profit.

It bears repeating that the sole remaining issue in this case is that of Defendant's *prospective* base hour changes, and whether they were sufficiently frequent to render the pharmacists' salaries the functional equivalent of hourly wages. Evidence of contemporaneous pay period changes motivated by budgetary concerns, however extensive, is no longer within the scope of this case. To establish a material issue of fact concerning prospective base hour adjustments, Plaintiffs cannot rely on ambiguous evidence or evidence suggesting that Defendant had a practice of making contemporaneous pay period adjustments. Yet Plaintiffs rely on precisely such evidence. The argument from this evidence, therefore, is unable to withstand summary judgment.

To demonstrate that Defendant's adjustments to its pharmacists' schedules were motivated by budgetary concerns, Plaintiffs cite a Wal-Mart Pharmacy District Manager's Guide (Exhibit 64),

-26-

weekly and monthly sales reports (Exhibit 65), and Wal-Mart's admission that pharmacists' wages are "adjustable depending on the average number of prescriptions per man hour." (Exhibit 63) None of these exhibits appears to indicate that Defendant, as a practice, made frequent *prospective* adjustments to its pharmacists' base hours in response to budgetary concerns. Plaintiffs do not offer any such connection either.

The District Manager depositions provide further evidence of Wal-Mart's concern with saving payroll costs, but none of them indicates that individual pharmacists experienced frequent prospective base hour adjustments. For example, District Manager Deborah Keaveny's testimony (Exhibit 44) about pressure to cut payroll expenses in response to declining sales, cited by Plaintiffs in their Response (p. 11), provides no indication that the resulting schedule adjustments came from prospective base hour changes as opposed to contemporaneous schedule changes. The Deposition of District Manager Nancy Plagge (Exhibit 45) is similarly ambiguous -- describing one staff pharmacist volunteering to take a day off without pay so that the pharmacy could meet its budget (Exhibit 45). Plagge's deposition also recounts another pharmacist working an eight-hour shift instead of a nine-hour shift (Exhibit 45), but the testimony provides no indication of whether the adjustment resulted from a prospective base hour reduction or a one-time contemporaneous adjustment.

It is not as clear to this court as it apparently is to Plaintiffs just how evidence of Defendant's budgetary concerns necessarily shows that it frequently made prospective changes to its employees' base hours. If they are to withstand summary judgment, Plaintiffs must show that these concerns were prospectively implemented on a frequent basis. Plaintiffs either cannot or choose not to provide this connection.

-27-

As stated above, this court's obligation to view the facts in a light most favorable to the Plaintiffs as the nonmoving party does not include an obligation to resolve factual ambiguities in favor of the Plaintiffs or to adopt Plaintiffs' assumptions. *See Lujan*, 497 U.S. at 888. Plaintiffs' assertions about the nature of the evidence will not be endorsed unless Plaintiffs can provide a reasonable basis that amounts to more than an assumption. Indeed, "[a]n appellant has the responsibility to provide . . . specific citations to the record and to tie relevant facts to [the] legal arguments." *Toth v. Gates Rubber Co.*, 2000 U.S. App. LEXIS 14374 (10th Cir. 2000). It is not this court's responsibility to search the record – in these exhibits or in any other exhibits – to identify evidence that might indicate frequent prospective base hour changes for the purpose of creating a material issue of fact. This is Plaintiffs' responsibility. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in [the record].").

Because Plaintiffs have failed to expand upon or otherwise clarify this ambiguous evidence, it cannot be relied upon so as to establish an issue of material fact concerning prospective base hour changes.

## IV. Recommendation

As a matter of law, Plaintiffs' evidence clearly showing prospective base hour adjustments to pharmacists' schedules does not show that such adjustments occurred frequently enough to render the salaries a "sham" or the functional equivalent of hourly wages under the standard articulated by the Tenth Circuit in *In re Wal-Mart Stores, Inc.*

Plaintiffs' remaining evidence in opposition to summary judgment is ambiguous and is therefore insufficient to create an issue of material fact with respect to the question of frequent

-28-

Aplt.App.01075

prospective base hour adjustments.  Accordingly,

IT IS RECOMMENDED that Defendants' "Motion for Summary Judgment" (Doc. #582) (filed March 8, 2006) be GRANTED and that judgment in this civil action be entered in favor of Defendant and against Plaintiffs.[25]


**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made.  28 U.S.C. § 636(b)(1).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  *See In re Griego*, 64 F.3d at 583; *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *One Parcel of Real Property*, 73 F.3d at 1060.  Failure to make timely objections may

---

[25]In light of the court's recommendation on the Motion for Summary Judgment, the court need not address the Defendant's alternative request for decertification of the collective action.

-29-

bar *de novo* review by the district judge of the magistrate judge's proposed findings and

recommendations and will result in a waiver of the right to appeal from a judgment of the district

court based on the proposed findings and recommendations of the magistrate judge. *See Vega v.

Suthers,* 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's

recommendation *de novo* despite the lack of an objection does not preclude application of the

"firm waiver rule"); *One Parcel of Real Property,* 73 F.3d at 1059-60 (a party's objections to the

magistrate judge's report and recommendation must be both timely and specific to preserve an

issue for *de novo* review by the district court or for appellate review); *International Surplus Lines

Insurance Co. v. Wyoming Coal Refining Systems, Inc.,* 52 F.3d 901, 904 (10th Cir. 1995) (by

failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to

appeal those portions of the ruling); *Ayala v. United States,* 980 F.2d 1342, 1352 (10th Cir. 1992)

(by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling).

*But see, Morales-Fernandez v. INS,* 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does

not apply when the interests of justice require review).

DATED at Denver, Colorado, this 25th day of July, 2006.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge

-30-

Aplt.App.01077

**2**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita L. Weinshienk

Master Docket No. 96-cv-91139-ZLW-CBS

In re: WAL-MART STORES, INC., FAIR LABOR STANDARDS ACT LITIGATION –
MDL 1139

---

**Consolidated Civil Action No. 95-cv-01705-ZLW-CBS**

BILLY PRESLEY,
CINDY WACASTER, and
JERRY ARCHULETA, for and on behalf of themselves and other employees similarly
situated,

     Plaintiffs,

v.

WAL-MART STORES, INC., a Delaware corporation,

     Defendant.

---

**and consolidated Civil Action No. 95-cv-02050-ZLW-CBS**

MICHAEL FIORENZI,

     Plaintiff,

v.

WAL-MART STORES, INC., a Delaware Corporation,

     Defendant.

---

**ORDER AND JUDGMENT OF DISMISSAL**

---

Weinshienk, Senior District Judge.


On August 28, 2003, an Order Entering Final Judgment (Doc. No. 492) was filed by the Court, dismissing with prejudice all but Plaintiffs' Prospective Reduction claims.[1] The matter now before the Court is Defendant's Motion For Summary Judgment Or, In The Alternative, For Decertification (Doc. No. 582) as to these remaining claims. This motion was referred to Magistrate Judge Craig B. Shaffer pursuant to D.C.COLO.LCivR 72.1C. On July 25, 2006, the Magistrate Judge issued a Recommendation that summary judgment be entered in favor of Defendant and against Plaintiffs on the remaining claims.[2] Plaintiffs filed timely and specific objections to the Recommendation.

As required by 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the Court has reviewed de novo all portions of the Recommendation to which Plaintiffs have objected. For the reasons stated below, the Court overrules these objections and adopts the Recommendation in its entirety.

---

[1] The two consolidated cases, Presley and Fiorenzi, involve different parties. However, the cause of action in both cases is identical. The Court will refer to the consolidated plaintiffs as Plaintiffs and Wal-Mart Stores, Inc., as Defendant. There is a related but not consolidated case still pending in this Court, Yates v. Wal-Mart Stores, Inc., No. 97-cv-00257-ZLW-CBS, that is not involved in the present motion. See, e.g., Yates v. Wal-Mart Stores, Inc., 58 F. Supp. 2d 1217 (D. Colo. 1999).

[2] Recommendation Of United States Magistrate Judge (Jul. 25, 2006; Doc. No. 612) [hereinafter Recommendation].

2

## I. Introduction

Plaintiffs are pharmacists who were employed by Defendant Wal-Mart Stores, Inc.  Plaintiffs allege violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219.  At this stage of litigation only one issue remains unresolved: did Defendant's policy of prospectively reducing the base hours of Plaintiffs result in their becoming the functional equivalent of hourly employees, therefore requiring Defendant to pay overtime wages?[3]

Employees are exempt from FLSA maximum-hour and overtime requirements[4] if they are "professionals," a classification which is determined via a two-part test: 1) the employee must perform certain listed duties identified in the Department of Labor's (DOL) Regulations and 2) the employee must be paid on a "salary basis."[5]  There is no dispute Plaintiffs satisfy the first part of the test[6] and that Defendant maintains a written compensation policy providing that pharmacists be paid on a salary basis.[7]  Instead, Plaintiffs claim Defendant's "actual policy involved prospectively reducing full-time

---

[3]A more thorough background of this case can be found in the Recommendation, at 2-4, and *In re* Wal-Mart Stores, Inc. (Wal-Mart II), 395 F.3d 1177, 1179-80 (10th Cir. 2005).

[4]Employees who work more than forty hours a week are entitled to be compensated for this overtime "work at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1).

[5]Wal-Mart II, 395 F.3d at 1180; 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.3(e) (2003); 29 C.F.R. § 541.118(a) (2003).

[6]Wal-Mart II, 395 F.3d at 1180.

[7]Id. at 1179.

3

pharmacists' base hours with a commensurate reduction in salary in response to sales declines, a policy . . . inconsistent with the [DOL] definition of salary."[8]  In other words, Plaintiffs claim Defendant's salary policy renders them hourly employees under the DOL's interpretation of the FLSA, thereby requiring Defendant to pay overtime wages for hours worked over forty in a week.

The United States Court of Appeals for the Tenth Circuit's decision in *In re* Wal-Mart Stores, Inc. (Wal-Mart II),[9] overturning this Court's previous order granting summary judgment to Plaintiffs (Wal-Mart I),[10] is the controlling law of this case.  Wal-Mart II is clear that for Plaintiffs to prevail on their remaining claims, Defendant's prospective salary adjustments[11] must be shown to be "so frequent as to make the salary the functional equivalent of an hourly wage," thereby rendering the "'salary' . . . a sham and deny[ing] the employer the FLSA exemption for professional employees" (hereinafter the sham exception).[12]  Defendant contends there are no material issues of fact as to the frequency of the prospective base hour adjustments and, as a matter of

---

[8]Id.

[9]Wal-Mart II, 395 F.3d 1177.

[10]*In re* Wal-Mart Stores, Inc. (Wal-Mart I), 58 F. Supp. 2d 1219 (D. Colo. 1999).

[11]"Prospective salary adjustments" refers to salary changes in "future pay periods" for which pay has not yet been set. Wal-Mart II, 395 F.3d at 1184.

[12]Id. at 1189.

4

Aplt.App.01126

law, the frequency of these changes do not rise to a sufficient level to invoke the sham exception.[13]

## II. Magistrate Judge's Legal Conclusions

The Court will discuss the Magistrate Judge's legal conclusions that are critical to resolving the merits of Defendant's motion.

Wal-Mart II provides guidance for determining the frequency of prospective salary changes acceptable under the DOL Regulations interpreting the FLSA by holding that the sham exception does not apply to Plaintiffs who experienced two or fewer changes.[14] The undisputed evidence shows more than ninety-eight percent of Plaintiffs experienced two or less prospective salary changes.[15] The Court agrees that this frequency of prospective changes is allowable under the DOL Regulations, that these Plaintiffs' salaries are not the "functional equivalent of an hourly wage," and summary judgment in favor of Defendant and against these Plaintiffs is appropriate.

The remaining two percent of Plaintiffs experienced either three or four prospective base hour adjustments.[16] These Plaintiffs' salaries were changed by Defendant over an extended period, averaging approximately four years and five

---

[13]The standard of review for summary judgment under Fed. R. Civ. P. 56 can be found in the Recommendation, at 4-5.

[14]See Recommendation, at 16-20; Wal-Mart II, 395 F.3d at 1186-89.

[15]Recommendation, at 15-16.

[16]Id. at 16.

Aplt.App.01127

months. The minimum length of time between changes for any individual Plaintiff was

six weeks, which one person experienced.[17] The average time frame between these

changes was over seven months for Plaintiffs experiencing three changes and over ten

months for Plaintiffs experiencing four changes.[18] Thus, on average these two percent

of Plaintiffs experienced salary adjustments only once or twice a year.

Yearly adjustments have been determined by the DOL to be an acceptable

practice for businesses to deal with changing market conditions.[19] Therefore,

Defendant could make two prospective salary changes a year and still be within

acceptable DOL guidelines. It follows logically that over four and a half years, nine

salary changes would be acceptable. Here, no Plaintiff has experienced this level of

modification. The maximum of four changes over four years is a far cry from the cases

used in Wal-Mart II to illustrate the sham exception in which employees' salaries were

prospectively changed *every pay period*.[20] The Magistrate Judge is correct that no

---

[17]Def.'s Mot. for Summ. J., Ex. A, at 5.

[18]Id. at 5-6.

[19]See U.S. Department of Labor, Wage and Hour Opinion Letter dated November 13, 1970, 1970 WL 26462 (yearly temporary salary adjustment, lasting five weeks, deemed acceptable under the DOL Regulations); Wal-Mart II, 395 F.3d at 1189 ("an employer may prospectively make changes in salary with a like adjustment in scheduled hours to accommodate its business needs"); U.S. Department of Labor, Wage and Hour Opinion Letter dated February 23, 1998 (1998 Wage Opinion), 1998 WL 852696, at 2 ("a fixed reduction of salary effective during a period when a company operates a shortened workweek due to economic conditions would be a bona fide reduction not designed to circumvent the salary basis payment").

[20]Wal-Mart II, 395 F.3d at 1188-89; see Caperci v. Rite Aid Corp., 43 F. Supp. 2d 83, 97 at n.14 (D. Mass. 1999) (a salary changed weekly would invoke the sham exception); Bongat v. Fairview Nursing Ctr., Inc., 341 F. Supp. 2d 181 (E.D.N.Y. 2004) (salary changed weekly invoked the sham exception); Thomas v. County of Fairfax, 758 F. Supp. 353, 356-57 (E.D. Va. 1991) (salary changed biweekly invoked the sham exception).

Aplt.App.01128

reasonable jury could find Defendant's prospective salary changes either "too common"[21] or "a pervasive manipulation"[22] sufficient to classify these Plaintiffs as hourly employees under the sham exception. The Court determines that these Plaintiffs' salaries are not the functional equivalent of an hourly wage, and summary judgment in favor of Defendant and against these Plaintiffs is appropriate.

### III. Objections to Recommendation

Plaintiffs identify eight areas where they allege the Magistrate Judge erred in his Recommendation. None of these objections have merit.

#### 1. Disregard of Court's Previous "Widespread" Finding

Plaintiffs first argue the Magistrate Judge disregarded the previous findings of this Court in Wal-Mart I that Defendant's "practice" of prospective salary changes was "widespread."[23] The Court finds no language in the Recommendation, and Plaintiffs point to no specific phrases, to indicate the Magistrate Judge disregarded these previous findings. Instead, the Magistrate Judge *agreed* that prospective salary

---

[21]Wal-Mart II, 395 F.3d at 1186.

[22]Id. at 1188.

[23]See Wal-Mart I, 58 F. Supp. 2d at 1222 ("there is no genuine issue of material fact that defendants engaged in a practice or policy of reducing base hours and base pay for the company's own interest"); Recommendation Of United States Magistrate Judge Bruce D. Pringle, at 18 (Doc. No. 142; Sep. 17, 1998) ("the Court finds and concludes that these reductions in base hours, and consequent decreases in pay of full-time pharmacists, were sufficiently widespread and . . . constitute[d] a practice or policy") (Recommendation adopted by Court in Wal-Mart I).

7

changes were "widespread" as he found that 19.68 percent of Plaintiffs experienced such changes.[24] Any action affecting almost twenty percent of a large group[25] is properly labeled as "widespread," as opposed to either "sporadic" or "occasional."

However, the remaining issue in this case is whether any *single employee's* prospective base hour adjustments reached the level invoking the sham exception. Whether this Court in the past has labeled the *totality* of Defendant's activity towards all Plaintiffs as "widespread" is not determinative as to whether Defendant's activity was so widespread with respect to any *single employee* that their salary became the functional equivalent of an hourly wage. Reliance on this Court's general characterization of Defendant's activity is insufficient to create a material issue of fact.

### 2. Disregard of Court's Previous Conclusions as to *Thomas*

Plaintiffs next object to the Magistrate Judge's alleged disregard of conclusions previously made by this Court in Wal-Mart I as to the factual similarities between this case and Thomas v. County of Fairfax.[26] Previously, this Court referred to Thomas as having "similar facts" and noted that court found "employees were not exempt from the FLSA when the employer set schedules prospectively."[27] Relying on Thomas, this

---

[24]Recommendation, at 15-16.

[25]Defendant's expert reported 577 members of the Presley collective action while Plaintiff's expert reported there are 950 members if Yates is also included. Id. at 15.

[26]Thomas, 758 F. Supp. 353.

[27]Wal-Mart I, 58 F. Supp. 2d at 1221.

8

Court concluded that "employers who prospectively change the quantity of work and payment for work may be liable under the FLSA."[28]  Subsequently, Wal-Mart II clarified that prospective salary changes are an acceptable practice by default, and it is only when the conduct rises to the level of the sham exception that an employee becomes non-exempt under the FLSA.

Relying on prior legal conclusions of this Court, without recognition that the Tenth Circuit subsequently clarified and expanded those conclusions, is inappropriate. The Magistrate Judge was correct in re-analyzing the case in light of Wal-Mart II, and his conclusions distinguishing the facts in Thomas from the present case were appropriate.

### 3. Reliance on Dicta

Plaintiffs allege the Magistrate Judge improperly relied on dicta in Wal-Mart II which states that Defendant "rarely reduced salaries of full-time pharmacists."[29] However, Plaintiffs identify no specific language in the Recommendation indicating the Magistrate Judge relied on this statement.  Instead, the Magistrate Judge refers to this statement as an "observation" and proceeds to explain, upon review of the evidence provided by the Plaintiffs, that this observation has not been shown to be materially

---

[28] Id.

[29] Wal-Mart II, 395 F.3d at 1189.

9

incorrect.[30]  The Recommendation shows a thorough, independent analysis of the evidence was performed by the Magistrate Judge to reach his conclusions.  Simply because the Magistrate Judge agreed with the Tenth Circuit's conclusions in no way indicates he "relied" on the dicta.

### 4. "Ambiguous" Evidence

Plaintiffs object that the Magistrate Judge's dismissal of Plaintiffs' evidence regarding prospective base hour changes as "ambiguous" was improper.  Plaintiffs argue they have produced evidence that *could* be interpreted as *possibly* being linked to the adjustments and fluctuations in the base hour changes.  To the extent evidence can be interpreted as ambiguous on summary judgment, Plaintiffs argue these ambiguities must be resolved in their favor.

The Magistrate Judge was correct in requiring more than mere argument as to how the evidence could be interpreted.  Instead, he required specific facts linking Plaintiffs' evidence to the issue of prospective base hour changes.[31]  The

---

[30]Recommendation, at 9.

[31]See Lujan v. National Wildlife Federation, 497 U.S. 871, 889 (1990) (for summary judgment motion, court only required to "resolve any factual issues of controversy in favor of the non-moving party . . . where the facts specifically averred by that party contradict facts specifically averred by the movant"); Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1490 (10th Cir. 1995) (the "nonmoving party may not rest upon . . . mere allegations") (quotations omitted); Roska v. Peterson, 328 F.3d 1230, 1246 n.13 (10th Cir. 2003) (judges should "not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury") (quotations omitted); U.S. v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("[j]udges are not like pigs, hunting for truffles buried in briefs").

Aplt.App.01132

Recommendation relied heavily on summaries prepared by both parties' experts concerning the frequency of prospective base hour adjustments. These summaries incorporate many of the conclusions Plaintiffs ask to be drawn from their proffered evidence.

To the extent Defendant's summary does not accurately reflect the evidence,[32] it was Plaintiffs' responsibility to identify specific evidence in the record disputing those conclusions that would create a triable issue of fact.[33] The Court agrees that Plaintiffs did not provide sufficient evidence to meet their burden.

### 5. Evidence that the Sham Exception Should be Applied

Next, Plaintiffs claim that sufficient evidence exists to create a genuine issue of material fact as to whether the sham exception should be applied. Specifically, Plaintiffs argue that their pharmacist affidavits, payroll history reports, and district manager depositions produce a material issue of fact sufficient to defeat summary judgment. To the extent Plaintiffs' evidence addresses prospective salary changes and

---

[32]Plaintiffs' summary of the employment data "correspond[s] closely" with Defendant's version. Recommendation, at 16 n.15. While the two summaries contain some minor variations, Defendant's version *strengthens* Plaintiffs' position (i.e., Defendant reported two employees experiencing four prospective base hour adjustments, while Plaintiffs reported none). Id. The Magistrate Judge was correct to rely on Defendant's summary since it presented the evidence in the light most favorable to Plaintiffs, the nonmoving party. See Lujan, 497 U.S. at 889.

[33]"The moving party bears the initial burden of showing that there is an absence of any issue of material fact. Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that there are genuine issues for trial." Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993) (citations omitted). It was Plaintiff's burden to "present specific facts, by reference to specific exhibits in the record, to overcome [a] motion for summary judgment." Mitchell v. City of Moore, 218 F.3d 1190, 1199 (10th Cir. 2000).

11

Aplt.App.01133

not collateral issues, this evidence was incorporated by the parties' experts in their reports. As previously discussed, Plaintiffs have not demonstrated the content of these summaries is incorrect. The information contained in the summaries is sufficient to determine whether the prospective base hour changes reached a level where the sham exception may reasonably be found. Since the frequency of Plaintiffs' prospective salary changes fell short of a level needed to invoke the sham exception, the Magistrate Judge's conclusion that Plaintiffs' other evidence did not create a genuine issue of material fact is appropriate.

### 6. *Auer* Analysis

Plaintiffs argue the Magistrate Judge erred by failing to consider the Supreme Court's dictate in Auer v. Robbins[34] that if employees are covered by a policy that permits improper salary reductions "as a practical matter," the salary-basis professional exemption should be denied.[35] However, the Tenth Circuit in Wal-Mart II already performed the necessary Auer analysis when holding that prospective salary adjustments that do not rise to the level of the sham exception are not "improper reductions," as defined by the DOL through its Opinion Letters.[36] Thus, there was no need for the Magistrate Judge to perform a separate Auer analysis.

---

[34] Auer v. Robbins, 519 U.S. 452 (1996).

[35] Id. at 461-62.

[36] See Wal-Mart II, 395 F.3d at 1182, 1184-86.

12

Aplt.App.01134

### 7. "Seasonal" Changes

Plaintiffs object to the Magistrate Judge's conclusion that "seasonal" changes are permissible under the DOL's interpretation of the regulations. As previously discussed, the *labeling* of salary changes is not relevant; rather, it is the *frequency* of the changes that determines if the salary arrangement is a sham. Regardless, both Wal-Mart II and the DOL Opinion Letters indicate that seasonal changes are an acceptable practice.[37]

### 8. Changes Within Current Pay Period

Plaintiffs' final objection is that they never intended their previous stipulations dismissing all other claims in this case to forgo their potential recovery for prospective salary adjustments during a pay period. However, it is clear from the record that Plaintiffs' only remaining claim is based on Defendant's prospective reduction of base hours in response to changing business conditions.[38] Since the term "prospective" was determined to mean changes involving future pay periods, not during the current pay period, the Magistrate Judge's analysis of solely prospective changes was correct.[39]

---

[37] See, e.g., 1998 Wage Opinion, 1998 WL 852696, at 2; Wal-Mart II, 395 F.3d at 1186.

[38] See Order Entering Final Judgment, at 2 (Doc. No. 492; Aug. 28, 2003) ("[f]inal judgment is hereby entered dismissing with prejudice *all* of the claims asserted by the . . . Plaintiffs against Wal-Mart . . . *except* for the . . . Plaintiffs' Prospective Reduction Claims") (emphasis added).

[39] Wal-Mart II, 395 F.3d at 1184.

13

## IV. Conclusion

After reviewing the evidence, objections, Defendant's response, and applicable case law, the Court is satisfied that the Magistrate Judge's Recommendation is thorough, thoughtful, and correct. Therefore, the Recommendation of the Magistrate Judge (Doc. No. 612) is accepted and adopted. Accordingly, it is

ORDERED that Plaintiffs' Objections To Recommendation Of U.S. Magistrate Judge (Doc. No. 616) are overruled. It is

FURTHER ORDERED that Defendant's Motion For Summary Judgment . . . (Doc. No. 582) is granted. It is

FURTHER ORDERED that final judgment is hereby entered in favor of Defendant and against Plaintiffs for dismissal of the remaining claims with prejudice. It is

FURTHER ORDERED that Defendant's Motion . . . In The Alternative, For Decertification is moot. It is

FURTHER ORDERED that the complaints and consolidated causes of action in civil cases numbered 95-cv-01705-ZLW-CBS and 95-cv-02050-ZLW-CBS are dismissed.

DATED at Denver, Colorado, this _23_ day of January, 2007.

BY THE COURT:

ZITA L. WEINSHIENK, Senior Judge
United States District Court

14