**ORAL ARGUMENT REQUESTED**

**No. 07-1065**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

---

JERRY ARCHULETA, *et al.,*

*Plaintiffs-Appellants,*

*v.*

WAL-MART STORES, INC.,

*Defendant-Appellee.*

---

On Appeal From the United States District Court for the District of Colorado
Judge Zita L. Weinshienk

---

BRIEF OF APPELLANTS JERRY ARCHULETA, ET AL.

---

| | |
|---|---|
| Gerald L. Bader, Jr. | Franklin D. Azar |
| Renée B. Taylor | FRANKLIN D. AZAR & ASSOCIATES |
| BADER & ASSOCIATES, LLC | 14426 E. Evans Avenue |
| 14426 E. Evans Avenue, Suite 200 | Aurora, CO 80014 |
| Aurora, CO 80014 | (303) 757-3300 |
| (303) 534-1700 | |

*Counsel for Plaintiffs -Appellants Jerry Archuleta, et al.*

April 30, 2007

# TABLE OF CONTENTS

I.    TABLE OF AUTHORITIES                                      iii

II.   PRIOR APPEAL                                               1

III.  STATEMENT OF JURISDICTION                                 1

IV.   STATEMENT OF THE ISSUES                                   2

V.    STATEMENT OF THE CASE                                     3

VI.   STATEMENT OF FACTS                                        5

    A.   WAL-MART'S STATED PHARMACIST
        COMPENSATION PROGRAM AND "BASE HOUR"
        POLICY                                             5

    B.   WAL-MART'S PHARMACIST COMPENSATION
        PRACTICES IN OPERATION                             6

    C.   WAL-MART'S ONGOING BUDGETARY AND
        SALES CONCERNS CONTROLLED THE ACTUAL
        PHARMACIST PAYROLL                                 8

    D.   PHARMACIST COMPENSATION WAS PROSPEC-
        TIVELY REDUCED AS A RESULT OF WAL-MART'S
        BUSINESS AND BUDGETARY DEMANDS                    10

    E.   PROCEDURAL HISTORY                               12

VII.  SUMMARY OF THE ARGUMENT                                  14

VIII. ARGUMENT                                                 15

    A.   THE REGULATORY SCHEME GENERALLY                  15

        1. The Professional Exemption                      15

        2. The Salary Test                                 16

B.   WAL-MART HAS THE BURDEN OF PROVING
     THAT THE PHARMACISTS WERE EXEMPT FROM
     THE FLSA OVERTIME PROVISIONS.                           17

C.   THE PROFESSIONAL EXEMPTION IS NOT AVAIL-
     ABLE TO WAL-MART BECAUSE WAL-MART'S
     ACTUAL PHARMACIST COMPENSATION PRACTICES
     DO NOT COMPLY WITH THE SALARY TEST.                     18

     1.  Genuine Issues of Material Fact Exist
         Precluding Summary Judgment.                        19

     2.  The District Court's Characterization and
         Dismissal of the Evidence as "Ambiguous"
         Was Erroneous.                                      21

         a.  Evidence Which Supports Several Distinct
             Claims is Not "Ambiguous".                      21

         b.  Even if the Evidence Could Be Considered
             Ambiguous, the District Court Erred in
             Failing to Resolve the Ambiguities in Favor
             of Plaintiffs as the Non-Moving Parties.        21

     3.  The District Court Erred in Failing to Examine
         Wal-Mart's Prospective Reduction Practices in
         Their Totality.                                     22

VIII.   CONCLUSION                                           23

STATEMENT REGARDING ORAL ARGUMENT                            24

CERTIFICATE OF COMPLIANCE                                    25

CERTIFICATE OF DIGITAL SUBMISSION                            26

CERTIFICATE OF SERVICE                                       27

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page(s)

Aaron v. City of Wichita, Kansas, 54 F.3d 652
(10th Cir. 1995), cert. denied, 516 U.S. 965 (1995)                17, 18

Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
106 S.Ct. 2505, 92 L. Ed. 2d 202 (1986)                            22

Arnold v. Ben Kanowsky, Inc., 361 U.S. 388,
80 S.Ct. 453, 456 (1960)                                           18

Auer v. Robbins, 519 U.S. 452, 117 S.Ct. 905 (1997)               22

Corning Glass Works v.Brennan, 417 U.S. 188, 94 S.Ct. 2223 (1974)  18

Donovan v. United Video, Inc., 725 F.2d 577 (10th Cir. 1984)       18

Reich v. State of Wyoming, 993 F.2d 739 (10th Cir. 1993)           18

Spradling v. City of Tulsa, 95 F.3d 1492 (10th Cir. 1996)
cert. denied, 519 U.S. 1149 (1997)                                16, 17,18

In Re Wal-Mart Stores, Inc., 58 F.Supp. 2nd 1219
(D.Colo. 1999)                                                     4, 13

In Re Wal-Mart Stores, Inc. Fair Labor Standards
Act Litigation MDL 1139, 395 F.3d 1177 ((10th Cir. 2005)          5, 13, 17

Zurich v. North America v. Matrix Service, Inc., 426 F.3d 1281
(10th Cir. 2005)                                                   22

## TABLE OF AUTHORITIES-CONTINUED

FEDERAL STATUTES AND REGULATIONS

28 U.S.C. § 1291                                                      1

28 U.S.C. § 1331                                                      1

28 U.S.C. § 1441                                                      1

29 U.S.C. § 201 <u>et</u>. <u>seq</u>.                                1, 3

29 U.S.C. § 207(a)(2)(c)                                              15

29 U.S.C. § 213                                                       15

29 U.S.C. § 213(a)                                                    3, 16

29 C.F.R. § 541.3                                                     3

29 C.F.R. § 541.3(a)-(d)                                              16

29 C.F.R. § 541.3(e)                                                  16

29 C.F.R. § 541.118(a)                                               17

FEDERAL RULES

Fed. R. App. P. 4(a)(1)(A)                                            1

## I.    PRIOR APPEAL

In re Wal-Mart Stores, Inc., 395 F.3d 1177 (10th Cir. 2005) (Archuleta v. Wal-Mart Stores, Inc., No. 03-1432; Archuleta v. Wal-Mart Stores, Inc., No. 03-1473 and Yates v. Wal-Mart Stores, Inc., No. 03-1434).

## II.    STATEMENT OF JURISDICTION

This appeal involves two cases which were consolidated by the U.S. District Court for the District of Colorado.  The first case is Presley v. Wal-Mart Stores, Inc., No. 95-Z-1705 which was filed in federal court.  The second case, Fiorenzi v. Wal-Mart Stores, Inc., No. 95-Z-2050, was originally filed in state court but timely removed by Wal-Mart Stores, Inc. ("Wal-Mart") and subsequently consolidated with Presley.  Both cases involve claims under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.  (the "FLSA").  The District Court properly had jurisdiction over these matters pursuant to 28 U.S.C. §§1331 and 1441.

The notice of appeal was timely filed in accordance with Fed. R. App. P. 4(a)(1)(A) on February 15, 2007.  Aplt. App. 1137-1138.  This appellate court's jurisdiction derives from 28 U.S.C. § 1291.  Final judgment was entered in the consolidated cases on January 23, 2007.  Aplt. App. 1123-1136.

### III.    STATEMENT OF THE ISSUES

1.      Whether the District Court erred in finding that Wal-Mart's widespread prospective pay adjustment practices satisfied the salary basis test of the FLSA professional exemption?

2.      Whether, in reviewing Wal-Mart's widespread prospective reduction practices, the District Court erred in limiting its review to formal written changes rather than the totality of the evidence of prospective reductions?

3.      Whether, in reviewing Wal-Mart's widespread prospective reduction practices, the District Court erred in dismissing evidence of prospective reductions which concomitantly supported other claims?

4.      Whether the District Court erred in applying the incorrect burden on drawing factual inferences or ambiguities in favor of the non-moving party?

5.      Whether, in reviewing Wal-Mart's widespread prospective reduction practices, the District Court erred in limiting its review to each pharmacist's prospective reductions in isolation rather than reviewing evidence of prospective pay adjustments for all collective action pharmacists in their totality?

## IV.    STATEMENT OF THE CASE

This case is a collective action which concerns Wal-Mart's full-time pharmacist compensation practices and policies during the time period 1993 to 1998.   During the relevant time period, Wal-Mart's full-time pharmacists were not paid overtime compensation as set forth under the Fair Labor Standards Act ("FLSA" or the "the Act"), 29 U.S.C. § 201 et seq.  Wal-Mart maintains that it was not required to do so because the pharmacists were "exempt".

The Act exempts salaried professional employees from overtime pay (the "professional exemption").  29 U.S.C. §213(a)(1).  The Department of Labor ("DOL") regulations provide that an employee falls within the bona fide professional exemption when the employee's job functions satisfy a "duties" test and the employee's compensation satisfies a "salary" test.  See 29 C.F.R. § 541.3. Plaintiffs submit that the bona fide professional exemption was unavailable to Wal-Mart, in the present case, because it failed to pay the pharmacists in accordance with the salary basis test.

As set forth in more detail below, Defendant Wal-Mart created a compensation scheme (delineated in "policy statements") which purported to comply with the salary basis test and the FLSA.  However, in practice, the policy was not operative and its actual compensation practices were contrary to the Act.

More specifically, Wal-Mart manipulated the pharmacists' salaries so that

they fluctuated depending on the demands of Wal-Mart's sales and budget objectives. The salaries delineated in the policy statements were merely hypothetical benchmarks and were really nothing more than scheduling tools, whereas actual salaries were variable and malleable in response to Wal-Mart's ongoing business needs. Because prospective salary reductions were recurring and were made so frequently, the pharmacists' "salaries" were the functional equivalent of an hourly wage and the purported "salaries" were, in essence, a sham. In response to Plaintiffs' allegations, Wal-Mart admits to manipulating the salaries but it claims that the manipulations or reductions were merely "occasional" or "infrequent". Therefore, Wal-Mart maintains, the pharmacist's compensation can still be characterized as salary based and its compensation practices in compliance with the salary test of the FLSA.

The District Court previously concluded that Wal-Mart's widespread compensation scheme of prospectively adjusting the salaries of the pharmacists was inconsistent with the salary basis test under the FLSA. In re Wal-Mart Stores, Inc., 58 F.Supp.2d 1219, 1221-1222 (D.Colo. 1999). Wal-Mart appealed and the Tenth Circuit Court of Appeals reversed and remanded for further findings. The Tenth Circuit Court held that an employer's practice of prospectively changing salaries may convert salaried employees to hourly employees entitled to overtime pay if the purported 'salary' becomes a sham – that is, the changes are so frequent

as to make the salary the functional equivalent of hourly wages.   In re Wal-Mart

Stores, Inc. Fair Labor Standards Act Litigation, MDL 1139, 395 F.3d 1177, 1179

(10th Cir. 2005).

On remand, Wal-Mart moved for summary judgment insisting that the

frequency of the fluctuations in the pharmacist salaries was limited and therefore,

did not convert its pharmacists hourly employees.  Despite significant evidence of

widespread prospective reductions, the District Court granted Wal-Mart's motion

holding that while such manipulations and fluctuations existed, they were not

frequent enough or not common enough to classify the pharmacists as hourly under

the "sham exception".  Aplt. App. 1123-1136 and final judgment was entered.

This appeal is from that final judgment.

## V.    STATEMENT OF FACTS

A.    WAL-MART'S STATED PHARMACIST COMPENSATION
PROGRAM AND "BASE HOUR" POLICY

Wal-Mart asserts that during the time period 1993 to 1998, it maintained its

"Full-Time Compensation Pharmacist Program" ("FTCP Program") which

uniformly covered the compensation all its full-time pharmacists.  Affidavit of

Director of Personnel for Pharmacy Jim White ("White Affidavit") at Aplt. App.

609 at ¶10. [1]   The terms of the FTCP Program were described in Wal-Mart's

---

[1]    The same compensation program was in place during the entire collective

written corporate policy statements titled "Full-Time Pharmacist Compensation Policy". Aplt. App. 624 (sample policy statement).

Generally, under the "Full Time Pharmacist Compensation Program", Wal-Mart stated that it would provide the full-time pharmacists with a "minimum" or "guaranteed" base number of hours at an agreed hourly pay rate ("Base Hours"). See White Affidavit, Aplt. App. 609 at ¶11. See also Wal-Mart Pharmacy Operations Manual, Aplt. App. at 628. Wal-Mart claimed that the structure of the FTCP Program allowed it to escape paying its pharmacists FLSA overtime pay. Aplt. App. 616-617.

## B.   WAL-MART'S PHARMACIST COMPENSATION  PRACTICES IN OPERATION

The Wal-Mart Pharmacy Operations Manual set forth the actual payroll practice in operation. Aplt. App. at 627-628. See also Aplt. App. 616. The pharmacist compensation was in fact, calculated based on the number of hours recorded by the pharmacist each pay period. Specifically, Wal-Mart pharmacists were instructed to key "in their hours worked" into the Pharmacy Computer System which would then generate the Pharmacy Final Payroll Reports (often referred to as District Manager Final Payroll Reports or "DMFPRs"). Aplt. App. at 627. This

---

action period. Affidavit of Jim Martin, Aplt. App. 602 at ¶3-4. Effective February, 1998, Wal-Mart implemented a "Revised Pharmacist Compensation Program" which, contrary to the compensation program at issue, was shift-based rather than simply hourly-based. Id. at Aplt. App. 603 at ¶6-7.

report was given to the payroll clerk at Wal-Mart headquarters in Bentonville, Arkansas.  <u>Id</u>.[2]  The hours worked during the pay period were not necessarily the Base Hours set forth under the individual's Full Time Pharmacist Compensation Policy statement.

Wal-Mart's business and payroll records confirm that the clocked-in hours were the basis for the pharmacists' pay or amount of compensation, that is, that the salary paid was a result of multiplying the  hours reported each pay period by the hourly wage rate.

Wal-Mart's business and payroll records set forth:

- The pharmacist's <u>stated Base Hours</u>[3];

- The actual number of hours <u>reported</u> for which compensation was calculated for each pharmacist; and

- The actual amount of <u>compensation paid</u> each pharmacist each pay period[4].

For example, the pharmacists' pay stubs show the total of each individual

---

[2]    <u>See</u> examples of DMFPRs at Aplt. App.  629-640.

[3]    <u>See</u> Full Time Pharmacist Compensation Policy (example at Aplt. App. 289)("Base Salary Hours for Payroll Clerk"); Pharmacist Payroll History Reports ("PPH"s) (examples at Aplt. App. 480-574)( "BASE HOURS"); Pharmacy Payroll Report by District (examples at Aplt. App. 641-644)("AVG PP-HRS").

[4]    <u>See</u> <u>e.g.</u> pay stubs (examples at Aplt. App. 645-653), Earning History Reports ("EHRs") (examples at Aplt. App. 659-669), and PPHs (examples at Aplt. App. 480-574).

pharmacist's paycheck was calculated by multiplying the rate of pay times the number of hours worked.  As a result, the pay stubs show fluctuations in the amount of compensation for each pay period which is typically not the Base Hours.  <u>See</u> <u>e.g.</u> Aplt. App. 645-653 and 739-741.[5]  Similarly, the PPHs compared the actual compensation paid with the "Base Hours" and the "Actual Hours" the pharmacist worked.  <u>See</u> Aplt. App. 480-574 (examples of PPHs from each of Wal-Mart's sixteen Regions). [6]

These business and payroll records demonstrate that, regardless of Wal-Mart's stated policy, or stated "guarantee" or stated Base Hours, Wal-Mart's pharmacists were paid based on (and only on) the number of hours actually reported.  <u>See</u> Expert Report of Jeffrey Opp at Aplt. App. 680-681 at ¶¶ 2 and 3.

C.    WAL-MART'S ONGOING BUDGETARY AND SALES CONCERNS
        CONTROLLED THE ACTUAL PHARMACIST PAYROLL

At the heart of Wal-Mart's actual compensation practices was its primary concern for budgetary and sales considerations.  Wal-Mart's systemwide budgetary

---

[5]    <u>See</u> <u>e.g.</u> pharmacist Amy Balmer's pay stubs (Aplt. App. 739-741) which show that she was paid for 85 hours one pay period; 82.50 hours one pay period; 77.5 hours one pay period; 88 hours one pay period, etc.  Her stated Base Hours, however,  were 45 per week (or 90 per pay period).  Aplt. App. 744-747.

[6]    <u>See</u> <u>e.g.</u> Aplt. App. 510 (pharmacist Brent Morgan's PPH shows that although his "stated" Base Hours were 90 hours, his actual salary was changed each pay period.  In fact, salary changes were so frequent that he was not paid the same amount for any given pay period in 1995).

directives for pharmacist payroll revolved around payroll to sales ratios and the number of prescriptions filled per hour.  Aplt. App. 754-763 (Wal-Mart Pharmacy District Manager's Guide).  See also Aplt. App. 752 (Wal-Mart's admission that pharmacists' wages are "adjustable depending on the average number of prescriptions per man hour." ).  Regional and District Managers were given a mathematical formula relating pharmacists' pay to sales figures.  Aplt. App. 760-761.  Numerous weekly and monthly reports and other documents were generated to enable the Regional and District Managers to track these fluctuating figures. Aplt.  App. 755-758.  See also Aplt. App. 764-772 (report examples).

Based on these reports and the dictates from Wal-Mart's headquarters in Bentonville, Regional Managers would put pressure on District Managers to cut and adjust full-time pharmacist payroll with the fluctuating sales figures on an ongoing recurrent basis.   See Aplt. App. 585 (admission by District Manager Deborah Keaveny that "If the numbers did not appear to be coming in where they would like to see them, that's when the pressure started coming to cut expenses. The biggest area that we had to control in the expense area is payroll.  It's the easiest one to take care of"); Aplt. App. 447 ("I was called on a monthly basis by my District Manager Larry Tally and given a set number of hours that were to be cut from each pharmacy located in our district...Larger pharmacies would have more hours cut than smaller stores"); Aplt. App. 581-582 (District Manager Kurt

Barry explained that "We would look at the number of prescriptions in the business and the sales of a particular store and make decision on each store individually…. Oftentimes in the summer prescription volume goes down, which means sales go down, and so we would adjust the hours that the store spends on pharmacist's base hours dictated by the volumes."); Aplt. App. 884 (District Manager Norm Beck Memoranda directive to pharmacists "increase sales and then we don't have to cut hours"); Aplt. App. 342  at ¶3 ("reduction in hours and days was to met[sic] payroll budget.  The payroll to sales ratio dictated the hours of the full-time pharmacists and was purely a profit decision by corporate management") and ¶5 ("the District Manager would directly call me with the instruction to reduce the pharmacy schedule.   Again, the reason was to meet payroll budget based upon percentage of sales.  Hours were intentionally reduced to save money").

D.    PHARMACIST COMPENSATION WAS PROSPECTIVELY REDUCED AS A RESULT OF WAL-MART'S BUSINESS AND BUDGETARY DEMANDS

The sales and budgetary mandates resulted in changes in pharmacist hours available for them to work.  Because compensation was tied to the hours worked, prospectively reducing or increasing the pharmacists' hours resulted in changes in their compensation.

These prospective reduction mandates manifested themselves in a variety of ways.  Many times they were informal (i.e. informing the pharmacist that the

pharmacist's schedule would be prospectively changed, resulting in reduced

compensation for the reduced hours worked and reported ).  Other times Wal-Mart

officially changed the stated Base Hours.[7]   Changes to stated Base Hours were

occasionally done in writing (i.e. by executing a new policy statement) but more

often were verbal as they changed with such frequency.  See Aplt. App. 599

(Deposition Transcript of District Manager Mitch Ziobro (admitting that he failed

to make changes to the stated base hours (i.e. executing a new Base Hour policy

statement) each time pharmacist schedules (and therefore, salaries) changed). See

also Aplt. App. 536 (pharmacist Justice's PPH which shows that during a 7 month

period, there were no fewer than six Base Hour changes and accordingly his actual

pay was for 89.50  hours one pay period, 91 hours the next pay period, 89 hours

the next pay period, 90 hours the following pay period, etc.);  Aplt. App. 497-498

(pharmacist Kurzawa's PPH which shows at least seven "verbal baseline changes"

in a ten month period); Aplt. App. 491-494 (pharmacist Solak's PPH (indicating no

fewer than fifteen verbal baseline adjustments during the relevant time period);

Aplt. App. 527 (pharmacist Beitscher's PPH showing seasonal base hour changes

90 to 89 to 60 and back up to 79); Aplt. App. 501 (pharmacist Hariri's PPH

showing baseline adjustments occurred repeatedly in a three month period ); Aplt.

---

[7] Aplt. App. 681- 682 (analysis of formal Base Hour changes alone showed
that over 26% of the opt-in pharmacists had their salaries prospectively reduced).

App. 486-488 (pharmacist Wagner's PPH (showing no fewer than ten baseline changes);  Aplt.  App. 359-363 (Affidavit and attachments of pharmacist Berry which set forth numerous changes in hours "because payroll to high");  Aplt. App. 788 (PPH for pharmacist Chase showing fluctuating salary due to "lack of volume" for numerous pay periods).

E.    PROCEDURAL HISTORY

This case was filed in July 1995.  Aplt. App. 6.  Plaintiffs moved for certification as an opt-in collective action.  Defendant stipulated that the pharmacists were "similarly situated"  and the District Court approved certification on April 8, 1996.  Aplt. App. 11.

In September of 1997, Plaintiffs moved for summary judgment on the issue of liability for violation of the FLSA.  Aplt. App.  23.  On September 17, 1998, U.S. Magistrate Judge Pringle issued his recommendation granting Plaintiffs' summary judgment motion. Aplt. App. 927-952.  The U.S. Magistrate Judge discussed Wal-Mart's policy and/or practice of making prospective reductions to the pharmacists'' hourly pay in order to reduce expenses and concluded such practice was contrary to the salary basis test of the FLSA and the related regulations.  Aplt. App. 942-949.  Specifically, he stated that "Plaintiffs have offered ample evidence that this practice [of prospectively reducing base hours of full-time pharmacists, resulting in a corresponding reduction in pay when business

was slow at a particular pharmacy] was extant".  Aplt. App. 942.  He further found

that:

> ... that these reductions in base hours, and consequent
> decreases in pay of full-time pharmacists, were
> sufficiently widespread and were authorized or approved
> by persons sufficiently high in the management ladder to
> constitute a practice or policy.

Aplt. App.  944.

U.S. District Court Judge Weinshienk agreed with U.S. Magistrate Judge

Pringle and entering summary judgment in favor of Plaintiffs held that:

> There is no genuine issue of material fact that defendants
> engaged in a practice or policy of reducing base hours
> and pay for the company's own interest.

See In re Wal-Mart Stores, Inc., 58 F.Supp.2d at 1222.

Wal-Mart appealed to the Tenth Circuit Court of Appeals.  The Tenth

Circuit  Court of Appeals concluded that "an employer may prospectively make

adjustments in salary with a like adjustment in scheduled hours to accommodate its

business needs" unless such changes "are so frequent as to make the salary the

functional equivalent of an hourly wage".   In re Wal-Mart Stores, Inc. Fair Labor

Standards Act Litigation, MDL 1139, 395 F.3d at 1189.  The Tenth Circuit court

remanded the case to the District Court for further proceedings.

On remand, Wal-Mart moved for summary judgment claiming that the

frequency of the fluctuations in the pharmacist salaries were limited in scope and

therefore, did not convert the employees to hourly.  The District Court granted

Wal-Mart's motion holding that while such manipulations and fluctuations existed,

they were not frequent enough or not common enough to classify the pharmacists

as hourly under the "sham exception".  Aplt. App. 1123-1136.

## VI.    SUMMARY OF THE ARGUMENT

Genuine issues of material fact exist concerning the applicability of Wal-

Mart's affirmative defense – that the pharmacists were exempt.  Wal-Mart has the

burden of proving that it plainly and unmistakenly falls within the exemption.

Wal-Mart has not and cannot prove that, as a matter of law, it is entitled to

summary judgment.    The District Court erred in determining the highly factual

question of whether the frequency of Wal-Mart's prospective changes to the

pharmacist compensation was sufficient enough to meet the sham exception

established by the Tenth Circuit Court of Appeals.

The District Court erred in not taking into account all the evidence of

prospective reductions.  Instead, the District Court limited its review to only formal

Base Hour manipulations rather than evidence of prospective reductions which

manifested themselves in less formal ways but which still resulted in prospective

reductions in salaries.

The District Court erred in holding that the evidence which is probative of

various claims is ambiguous and therefore, should be dismissed without giving it

any weight.  Further, the District Court erred because even if the evidence was ambiguous, such ambiguity should have been resolved in favor of Plaintiffs as the non-moving parties.

The District Court erred in not reviewing Wal-Mart's prospective reduction practice in its totality but only as to each individual pharmacist in isolation. In reviewing a totality of the evidence, it is clear that at least a question of fact exists as to whether Wal-Mart's practice of prospectively reducing pharmacists' salaries is frequent enough that the pharmacist compensation should be characterized as the functional equivalent of an hourly wage and a "sham".  For these reasons, summary judgment should be reversed and this matter should be remanded for further proceedings.

## VII.   ARGUMENT

### A.     THE REGULATORY SCHEME GENERALLY

#### 1.     The Professional Exemption

The FLSA requires employers to pay time and one-half to employees who work more than forty hours per week and who are not exempt.  29 U.S.C. § 207(a)(2)(c).   The FLSA exempts certain categories of individuals from this overtime pay requirement.   Provided that all the necessary tests are met, an employee in a bona fide "professional capacity" . . . is exempt from receiving overtime pay.   See, 29 U.S.C. §213(a) (the"professional exemption").  Wal-Mart

15

claims that the professional exemption was applicable to its pharmacists.

The scope of the professional exemption is not defined in the FLSA itself. Spradling v. City of Tulsa, 95 F.3d 1492, 1495 (10th Cir. 1996) cert. denied, 519 U.S. 1149 (1997). Rather, the Department of Labor ("DOL") is responsible for defining and delimiting the operative definitions of these terms through interpretive regulations. Id.

In defining the terms and the scope of the professional exemption, the regulations set forth a two-part test. The first part of the test requires that the employee have certain professional duties and responsibilities. See 29 C.F.R. § 541.3(a)-(d). This is referred to as the "duties" test. The second part of the test requires that the employee be paid a salary and that the employee earn a certain minimum amount. See 29 C.F.R. § 541.3(e). This is commonly referred to as the "salary" test.

In the present matter, Plaintiffs have stipulated that the pharmacists have professional duties and responsibilities and thereby satisfy the "duties" test of the professional exemption. However, the evidence clearly demonstrates that the pharmacists were not paid on a "salaried" basis as that term is defined under the regulations.

2.    The Salary Test

As stated above, in order to be exempt under the professional exemption, the

employee must be compensated on a "salaried" basis.  The DOL regulations provide that an employee is a salaried employee only

> [I]f under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed....

29 C.F.R. § 541.118(a).  At issue is whether Wal-Mart's practice of prospectively reducing the amount the pharmacist receives precludes a finding that the pharmacists receive a "predetermined amount".

In the present case, the Tenth Circuit addressed the issue of prospective reductions to salary to accommodate the employers' business needs.  In re Wal-Mart Stores, Inc. Fair Labor Standards Act Litigation, MDL 1139, 395 F.3d 1177 (10th Cir. 2005).  The Tenth Circuit concluded that where the prospective salary reductions "are so frequent as to make the salary the functional equivalent of an hourly wage" the 'salary' will be treated as a sham and the employer will be denied the FLSA exemption for the employees.   Id. at 1189.

B.     WAL-MART HAS THE BURDEN OF PROVING THAT THE PHARMACISTS WERE EXEMPT FROM THE FLSA OVERTIME PROVISIONS.

The employer bears the burden of showing that its employees are exempt from the FLSA's overtime provisions and the burden is a heavy one.  Spradling, 95 F.3d at 1495; Aaron v. City of Wichita, Kansas, 54 F.3d 652, 657 (10th Cir. 1995),

cert. denied, 516 U.S. 965 (1995); Reich v. State of Wyoming, 993 F.2d 739, 741

(10th Cir. 1993). See also Corning Glass Works v. Brennan, 417 U.S. 188, 196, 94

S.Ct. 2223, 2229 (1974)("the application of an exemption under the Fair Labor

Standards Act is a matter of affirmative defense on which the employer has the

burden of proof").   The employer's burden is heightened beyond the usual

preponderance standard, such that it must show that "the employee fits plainly and

unmistakenly within the exemption's terms".  Arnold v. Ben Kanowsky, Inc., 361

U.S. 388, 392, 80 S.Ct. 453, 456 (1960); Spradling, 895 F.3d at 1495.   An

employer must prove that an employee is exempt by "clear and affirmative"

evidence.   Aaron, 54 F.3d at 657; Donovan v. United Video, Inc., 725 F.2d 577,

581 (10th Cir. 1984).  Therefore, the burden of proving that the pharmacists were

salaried and fall within the professional exemption is Wal-Mart's.  Wal-Mart has

not overcome its heavy burden of demonstrating that by clear and affirmative

evidence its actual compensation practices fell plainly and unmistakenly within its

scope.

C.    THE PROFESSIONAL EXEMPTION IS NOT AVAILABLE TO WAL-
MART BECAUSE WAL-MART'S ACTUAL PHARMACIST
COMPENSATION PRACTICES DO NOT COMPLY WITH THE
SALARY TEST.

While Wal-Mart's stated policy for its full-time pharmacist compensation

program may or may not comply with the salary requirements of the FLSA, its

actual practices are the focus of the inquiry.  In practice, Wal-Mart simply used the Base Hour concept as a hypothetical benchmark; really, as a scheduling tool, and the schedule depended on sales and budgets.  Wal-Mart's focus on meeting certain budget figures and sales goals was always top priority.  Business goals were at the forefront and Wal-Mart simply disregarded the ramifications of frequent prospective changes to pharmacist salaries.  Pharmacists' salaries were subject to prospective reductions on an ongoing and recurrent basis.

Wal-Mart has admitted that it made prospective reductions in salary as a result of its business needs.  Wal-Mart's claim that such prospective reductions were infrequent is simply contrary to its own business records which demonstrate unequivocally, that the frequency of the pharmacist prospective reductions were significant.  In fact, Wal-Mart's own business records show that Wal-Mart's actual practices made a sham out of its stated policy and out of Wal-Mart's claim that the pharmacists were paid on a salaried basis.

1. <u>Genuine Issues of Material Fact Exist Precluding Summary Judgment</u>

Plaintiffs demonstrated that at a minimum, a material fact question existed as to whether Wal-Mart's practice of prospective reduction was sufficiently pervasive so as to be in violation of the salaried basis test.  The District Court erred in failing to consider all the evidence presented in opposition to Wal-Mart's motion for summary judgment.  Specifically, the Court erroneously concluded that

the pharmacists' Affidavits, PPHs, Deposition transcripts and other materials were "incorporated by the parties' experts in their reports".  Aplt. App. 1133.  This conclusion is simply incorrect.

Wal-Mart's manipulations or prospective reductions of the pharmacists' pay were conducted by changing the pharmacist schedules on an ongoing basis.   One such category of both method and documentation was the formal reduction  of Base Hours.  Plaintiffs provided a summary and Defendants were generally in agreement (with minor variations) as to the formally executed written reductions in pharmacists Base Hours.  <u>See</u> Aplt. App. 1131.  While this was the limited scope of the evidence of prospective reductions analyzed by Plaintiffs' expert Mr. Opp, it is by no means the totality of the evidence.  It is merely the starting point of the evidence showing Wal-Mart's prospective manipulations of the pharmacists' compensation.

Because of this misconception, the other evidence was erroneously dismissed by the District Court.  For example, Plaintiffs submitted other evidence which was simply not included in the expert analysis of the formal written Base Hour reductions but clearly evidences that additional prospective reductions occurred on a frequent basis.  <u>Compare</u> Aplt. App. 281 (indicating that pharmacist Kurzawa had one formal Base Hour change) with Aplt. App. 497-498 (showing that Kurzawa in fact had at least seven "verbal baseline changes" in a ten month

period). Similarly, <u>compare</u> Aplt. App. 282 (indicating that pharmacist Solak had one formal Base Hour change) with Aplt. App. 491-494 (indicating no fewer than fifteen verbal baseline adjustments during the relevant time period).

    2. <u>The District Court's Characterization and Dismissal of the Evidence as "Ambiguous" Was Erroneous.</u>

        a.    Evidence Which Supports Several Distinct Claims is Not "Ambiguous".

The District Court erred in accepting the Magistrate's dismissal of the evidence as "ambiguous". Aplt. App. 1132-1133. <u>See also</u> Aplt. App. 1056 and 1071. Initially, Plaintiffs claimed that Defendant Wal-Mart violated the FLSA's salary basis test by "docking their pay for partial day absences" as well as by prospectively adjusting pharmacists' salaries in response to business demands. Aplt. App. 1050. Plaintiffs' partial day docking claim has been dismissed. <u>Id.</u> However, dismissal of the alternate claim does not result in dismissal of evidence as well. The District Court erroneously dismissed evidence which demonstrates frequent prospective reductions because it also evidences other wrongful conduct such as partial day docking. Rejecting such evidence as "ambiguous" ties Plaintiffs' hands without basis.

        b.  Even if the Evidence Could Be Considered Ambiguous, the District Court Erred in Failing to Resolve the Ambiguities In Favor of Plaintiffs as the Non-Moving Parties.

The longstanding rule is that the court must resolve all <u>ambiguities</u> and draw

all factual inferences in favor of the non-moving party when reviewing a motion

for summary judgment. <u>Zurich North America v. Matrix Service, Inc.</u>, 426 F.3d

1281, 1287 (10th Cir. 2005). <u>See</u> <u>also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is evidence in the record

from which a reasonable inference could have and should have been drawn in

favor of Plaintiffs. Therefore, even if the evidence was "ambiguous", which

Plaintiffs submit it is not, such evidence should have been viewed in light most

favorable to Plaintiffs, not rejected outright.

3.  <u>The District Court Erred in Failing  to Examine Wal-Mart's Prospective
    Reduction Practices in Their Totality</u>.

The District Court erroneously concluded that the sham exception must be

determined on a single employee level rather than the totality of Defendants'

activity is erroneous. <u>See</u> Aplt. App. 1130. Such a conclusion is contrary to the

dictate of the U.S. Supreme Court in <u>Auer v. Robbins</u>, 519 U.S. 452, 117 S.Ct.

905(1997). The United States Supreme Court directs that when employees are

covered by a policy that permits improper reductions "as a practical matter", the

exemption will be denied. <u>Auer</u>, 519 U.S. at  461-62, 117 S.Ct. at  911-912. That

standard is met if there is either an actual practice of making such reductions <u>or</u> an

employment policy or practice that creates a "significant likelihood" of such

reductions. <u>Id</u>.

In the present case it is clear that Wal-Mart's compensation practices permit

wrongful reductions as a practical matter.  There is substantial evidence that the frequent and recurrent reductions were actually made and further, it was abundantly clear that there was a significant likelihood that Wal-Mart's practices would create other reductions.  An example is the admissions by the District Managers that ongoing review of the budget considerations would result in prospective reductions.  Plaintiffs produced evidence of actual base hour reductions across the class period without geographical boundaries, throughout the year, for a multitude of reasons.  In fact, Wal-Mart even admits that it has made reductions.

In light of Wal-Mart's burden to show that it falls within the exemption and the fact that the evidence was to be viewed in the light most favorable to Plaintiffs as the nonmoving party, the District Court's conclusion that as a matter of law, there is no significant likelihood of prospective reductions which are so numerous that the salary is really the functional equivalent of an hourly wage is simply erroneous.

## VIII.  CONCLUSION

For the foregoing reasons, this Court should reverse the district court's grant of summary judgment and remand for further proceedings.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests that this Court hear oral argument in this appeal.  This case is both factually and legally complex, and oral argument would therefore materially assist the Court.

Respectfully submitted,

BADER & ASSOCIATES, LLC


s/ Gerald L. Bader, Jr.
Gerald L. Bader, Jr.
Renée B. Taylor
14426 East Evans Avenue, Suite 200
Denver, Colorado 80014
Telephone:  (303) 534-1700
Telecopier:    (303) 534-1701

FRANKLIN D. AZAR & ASSOCIATES
Franklin D. Azar
Jon Neil Barclay
14426 East Evans Avenue
Denver, Colorado 80014
Telephone:  (303) 757-3300
Telecopier:  (303) 757-3206

ATTORNEYS FOR PLAINTIFFS-
APPELLANTS

## CERTIFICATE OF COMPLIANCE

I, Colette M. Poeppel hereby certify that:

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5350 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii),  according to the word-count facility in Microsoft Word.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed.  R.  App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman type style.


_____

Colette M. Poeppel

By: /s/ Colette M. Poeppel
Colette M. Poeppel (Digital)


Dated:  April 30, 2007

## CERTIFICATE OF DIGITAL SUBMISSION

I HEREBY CERTIFY THAT A COPY OF THE FOREGOING Appellant's Opening Brief, as submitted in Digital Form is an exact copy of the written document filed with the Clerk and has been scanned for viruses with the McAfee VirusScan Enterprise 7.1.0, Virus Definition File Dated: April 27, 2007 and according to the program, is free of viruses.

_____

Colette M. Poeppel

By: /s/ Colette M. Poeppel
Colette M. Poeppel (Digital)

Dated:   April 30, 2007

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Appellant's Opening Brief was furnished by U.S. Mail to the following on this 30th day of April, 2007:

Steven J. Merker
Gregory S. Tamkin
Elizabeth Morton
DORSEY & WHITNEY
370 17th Street, Suite 4700
Denver, CO 80202

Additionally, on the same date, a copy of the digital submission in electronic form was emailed to:
Merker.Steve@dorsey.com
Tamkin.Greg@dorsey.com
Morton.Elizabeth@dorsey.com

_____
Colette M. Poeppel

By: /s/ Colette M. Poeppel
Colette M. Poeppel (Digital)

Dated:   April 30, 2007